## William H. Simmons

### *vs.*

### Herman Holster et al.

An advertisement published in a newspaper, stating that certain property was stolen from the subscriber, and that the thief is believed to be one W. H. S. [the plaintiff], is a libel, and is actionable *per se.*

When libelous words are actionable in themselves, the malicious intent in publishing them, is an inference of law. But if the circumstances of the publishing are such as to repel that inference, and exclude any liability of the defendant, unless upon proof of actual malice, the plaintiff must furnish such proof.

A witness should not be compelled to answer a question, the answer to which will criminate himself.

To prove the publication of a newspaper containing a libel, it is not necessary to produce a copy which has been actually published, but upon the production of a copy not actually published, testimony is admissible tending to prove that papers of the same kind were published.

In an action for a libelous publication in a newspaper, against a person who is not the publisher of the paper, and has no connection with it, the mere production of the paper containing the libel, is not sufficient to connect the defendant with such libelous publication, and unless the defendant is connected with the publication, the papers containing the libel are not admissible in evidence.

When a complaint contains two causes of action for distinct libels, both of which are submitted to the jury, and a general verdict for damages is rendered for the plaintiff, if material error is committed in the reception of evidence in support of one of the causes of action, the verdict will be set aside, and a new trial granted.

In an action for a libel charging the plaintiff with a crime, evidence offered by the defendant of the general speech of the people in a neighbor-

hood where the crime was committed, as to the plaintiff having com mitted such crime, or "of the general reputation and character of the defendant concerning his having committed the same," limited to a period between the time the libel was written, and mailed for publication by the defendants, and the first publication thereof, is not admissible.

In an action for libel, one of the defendants having testified, without objection, to certain statements made to him by a person not a party to the action, implicating the plaintiff in the commission of the crime imputed to him in the libel, evidence on the part of the plaintiff, impeaching the general character of such person for truth and veracity, is competent.

Where one person without any authority, or color of authority, publishes a libel in the name of another, who has no knowledge of the publication until after it is made, the mere silence of the latter, or his neglect to disclaim or repudiate the publication, will not render him liable to an action for damages.

This action was brought in the District Court for Scott county. The complaint alleges that the defendants, Herman Holster and Sebastian V. Hanft, composed and caused to be published in the "Saint Paul Press", on the 19th, 20th and 21st days of August, 1864, a certain false and malicious libel, of and concerning the plaintiff, in the following words, to-wit:

"STOLEN.—On Sunday night, 14th instant, (meaning the 14th day of August, 1864), from the subscriber at Belle Plaine, a horse, mare and colt. The horse is a roan, three years old, feet, mane and head are black. The mare is also roan, 11 years old, with white stripe on forehead, commencing large and running out small to nose. The right hind hoof is marked by being stepped on. The thief is believed to be one William H. Simmons, (meaning the plaintiff), who delivered the horse to some other parties. A liberal reward will be paid for information leading to the recovery of this property.           S. V. HANFT,

HERMAN HOLSTER."

And that they also composed and caused to be published in the "Minnesota Statesman" a certain other false and mali-

cious libel, of and concerning the plaintiff, in the following words, to wit: " STOLEN.—On Sunday night, the 14th inst., (meaning the 14th day of August, 1864), from the subscriber at Belle Plaine, a large roan mare with a sucking colt. The mare is about 11 years old, has a white stripe in the forehead, which is largest at the top, and a mark on the right hind foot, caused by stepping upon it. Also a roan horse, three years old last spring, with black mane, tail and feet. The thief is believed to be one William H. Simmons, (meaning the plaintiff), of Belle Plaine. He delivered the horses to another man, not known, who went off with them. A liberal reward will be paid to any person who will furnish information regarding the whereabouts of this property. Address S. V. Hanft or Herman Holster, (meaning the defendants), Belle Plaine, Minn."

The answer contained a general denial, and alleged that on the 14th day of August, 1864, the defendant, Herman Holster, and his brother, William Holster, were the owners of the horse, mare and colt mentioned in said advertisements; that they were stolen that night; that before such alleged publications the plaintiff was suspected and believed by his neighbors and others to have stolen the same; and that on the 19th of August, 1864, and prior thereto, he was under arrest charged with stealing said horse, mare and colt. The answer further alleged that on the 16th day of August, 1864, Willam Holster applied to defendant Hanft to write out for him an advertisement, describing the horses and the circumstances of the theft, with the view to facilitate the efforts being made for their recovery; that said Hanft, without any intent or purpose of reproaching the plaintiff with stealing, and solely for the aforesaid purpose, under the direction of said William Holster, as his amanuensis only, wrote advertisements similar to the ones set out in the complaint, with Herman Hols-

ter's name thereto ; that at the request of said William Holster, and for the aforesaid purpose, he put his own name at the foot of said advertisements, as a person to whom information concerning the horses could be sent. The plaintiff replied admitting the arrest, but alleging that the warrant was issued by defendant Hanft, as Justice of the Peace, upon complaint of defendant Holster, and that plaintiff was discharged for want of testimony ; took issue upon all the other new matter in the answer, except those allegations respecting the writing of advertisements by defendant Hanft similar to those mentioned in the complaint, &c., to which he demurred, and the demurrer was overruled by the Court. The cause was tried before a jury, who found a verdict against the defendants for the sum of $200. The defendants by their counsel made a motion for a new trial, which was denied, and they appeal from the order denying the same to this Court. Such portions of the testimony as are necessary to an understanding of the points decided, and the rulings of the Court on the trial, appear in the opinion of the Court.

HENRY HINDS for Appellants.

CHATFIELD & IRWIN for Respondent.

*By the Court*—McMILLAN, J.—This is an action for the recovery of damages for an alleged libel. The publication charged as libelous is clearly actionable in itself. It charges distinctly an indictable offense. *McCarthy vs. Barrett*, 12 *Minn.*, 496. ⌐t is not disputed that the plaintiff is the person intended in the publication. The statement that " the thief is believed to be one William H. Simmons, who delivered the horse to some other parties," is an imputation of the crime to the plaintiff as effectual as if made in positive language. The charge need not be couched in positive terms. A positive

averment is only made because the party believes the truth of it. *Miller vs. Miller*, 8 *Johns*, 74 ; *Geshame vs. Ives*, 2 *Wend.*, 536 ; *Beehler vs. Staver*, 2 *Wh.*, 313 ; 1 *Hilliard on Torts*, *Ch.* 8, *sec.* 21, *p.* 292 ; *Dottaver vs. Bushey*, 16 *Penn.*, 204 ; 1 *Am. L. Cases*, *4th Ed.*, *p.* 135. When the libelous words are actionable in themselves, the malicious intent in publishing them is an inference of law. But if the circumstances of the publishing were such as to repel that inference, and exclude any liability of the defendants, unless upon proof of actual malice, the plaintiff must furnish that proof. 2 *Greenl. Ev.*, *sec.* 418. The question of malice was, therefore, for the jury, and there being testimony *pro* and *con* upon the subject, we see no reasons to disturb the findings upon this ground. Upon the trial of the cause, the plaintiff called as a witness in chief S. V. Hanft, one of the defendants. The witness, by his counsel, before being sworn, objected to being compelled to give evidence against himself. The Court overruled the objection and the defendant excepted.

The witness having been duly sworn, a writing, which had been previously identified as the manuscript received by the publisher of the St. Paul Press, and from which the publication in that paper had been made, was shown to the witness, and thereupon he was asked " Did you write this paper ?" Thereupon the witness, defendant, objected to being compelled to answer the question, because the evidence to be given in answer to the question, would tend to convict him of a criminal offense. The objection was overruled by the Court, and such ruling excepted to by this defendant, and the witness, being required to answer, testified as follows : " I wrote that paper, and the writing subjoined thereto. I wrote a similar one, intended for the ' Minnesota Statesman.' I did not send that paper to the ' St. Paul Press,' nor the other one to the

' Minnesota Statesman.' The objection, taken by the defendant at the time of calling the witness to be sworn, was not well founded, for the defendant was a competent witness under our law, and so long as no improper question was asked, could not object to testifying.

But the question asked the witness referred to the manuscript from which this libel was published, and which was already in evidence in the cause. A libel is an indictable offense; the direct tendency, therefore, of the question, was to criminate the witness. When it reasonably appears that the answer will have a tendency to expose the witness to a penal liability, or to any kind of punishment, or to a criminal charge, "the authorities," says Greenleaf, "are exceedingly clear that the witness is not bound to answer," and he may claim the protection at any stage of the inquiry, whether he has already answered the question in part, or not at all. If the fact to which he is interrogated form but one link in the chain of testimony, which is to convict him, he is protected. And whether it may tend to criminate or expose the witness, is a point upon which the Court is bound to instruct him." 1 *Greenl. Ev.*, *Sec.* 451, and authorities cited in note. In view of the facts existing at the time of the trial, therefore, the witness should not have been compelled to answer the question. Whether the testimony of Hanft in regard to the matter voluntarily given when called by defendant cures the error, we need not, perhaps, stop to examine, as in the view we take of the case a new trial must be granted on other grounds; and this question is one peculiar to this trial, and will not, in all probability, arise again.

The "plaintiff offered in evidence three copies of the St. Paul Daily Press," bearing date respectively 19th, 20th, and 21st days of August, 1864, and each containing the advertisement set up in the complaint as a libel, and also three copies

Simmons v. Holster et al.

of the Minnesota Statesman, also containing said advertisement, "to which the defendants objected that there was no proof of publication." The objection was overruled, and the advertisements were read in evidence.

The copies of the St. Paul Press offered in evidence were properly received. The witness Driscoll, who states that he was one of the publishers of that paper, testifies that each of the papers offered is a copy of the St. Paul Press, published on the day of its date ; that the daily circulation of the paper then was 2,500, and from thirty to forty in Scott county ; he identifies the manuscript produced as the one from which the advertisement claimed to be libelous was published, and states that it was inserted in the whole edition of that paper on each of the days on which the paper purported to be published. To prove the publication of a newspaper it is not necessary to produce a copy which has been actually published, but upon the production of a copy not actually published the witness may swear that papers of the same kind were published. 1 *Phil. Ev.*, 553; 2 *Stark. on Slander*, 49 ; 1 *Hilliard on Torts*, *Ch.* 15, *Sec.* 60, *p.* 463; *McLaughlin vs. Russel*, 17 *Ohio R.*, 475; *Huff vs. Bennet*, 4 *Sandf. R.*, 120. But the publication of the libelous advertisement in the Minnesota Statesman was a distinct and substantive cause of action, and we think there are several reasons why the copies of that paper were erroneously received in evidence.

The action is not against the publishers of the paper, but against persons having no interest in it; the mere production of the papers containing the advertisement, therefore, is not sufficient to connect them with the libelous publication ; there must be other proof for this purpose; as the publications in the respective papers are materially different, they could not be from the same or a similar manuscript ; the fact, therefore, that the evidence of Driscoll connects the defendants with

the manuscript from which the Press published, does not connect them with the publication in the "Statesman."

The testimony of Hanft that he wrote the Press manuscript, and that he wrote a *similar* one *intended* for the Statesman, as we have seen, was improperly received; but if it were otherwise, there is no evidence that the manuscript intended for the Statesman was ever sent to or received by the publishers of that paper, or that it was published therein; for we must presume that the publication in the copies of the Statesman offered in evidence was that described in the complaint; it must therefore have been materially different from the manuscript written by Hanft, which was, as he states, similar to that published in the Press. Again, if the publication in the Statesman was in fact similar to that in the Press, it differed materially from the libel set up in the complaint. But further, it does not appear at what time the copies of the Statesman received in evidence were published or purported to have been published; the date or dates of publication are not given; the only testimony in regard to the publication of the Statesman, which appears in the paper-book, is that of the witness Driscoll, who after stating that the notice was published in the Press on the 19th, 20th and 21st of August, 1864, says: "I know that these were published at St. Peter, Minn., in the summer of 1864 *in a weekly* newspaper called the Minnesota Statesman; * * * the newspaper now shown me is a copy of that paper." This language clearly refers to something published in the Statesman, and cannot be construed to mean that the copies of that paper in evidence were published in the summer of 1864, and the context shows that the witness referred to the notices published in the Press on the 19th, 20th and 21st of August, 1864. One copy only of the paper is shown to the witness; this he identifies as a copy of the Statesman, but we are left entirely in the dark as

Simmons v. Holster et al.

to the time of its publication. From anything that appears, therefore, the copies of the Statesman in evidence may have been published after the commencement of the action. There was no evidence therefore to connect the defendants or either of them, with the libel published in the Statesman, and the proof of the publication of the copies of that paper was insufficient. The papers therefore should not have been received. There are two distinct causes of action set up in the complaint, one for the publication in the St. Paul Press, the other for the publication in the Minnesota Statesman; and it appears from the pleadings that the publications in these papers respectively alleged to be libelous, were materially different. The verdict of the jury is general; it is impossible, therefore, to say that the jury did not base their finding upon both causes of action, nor can the damages found by the jury be apportioned to the respective causes of action. As the copies of the Minnesota Statesman were erroneously received in evidence, and without them there is no evidence whatever to sustain the verdict as to the cause of action for the publication in the Statesman, the verdict must be set aside, and a new trial granted.

The defendant asked the witness Hanft the following questions: " State what the general speech of the people at Belle Plaine was between the 16th and 19th days of August, 1864, about the plaintiff having stolen said horses?" " State what the plaintiff's general reputation and character was at Belle Plaine between the 16th and 19th days of August, 1864, concerning having stolen said horses?" which were each objected to by the plaintiff's counsel as immaterial and incompetent. The objections were sustained by the Court, and the defendants excepted. It appears that the libel was written at Belle Plaine on the 16th of August, 1864, and sent by mail to the publisher of the St. Paul Press, at St. Paul, and was published

in the St. Paul Press on the 19th, 20th and 21st of the same month. Even if the questions propounded to the witness were competent in other respects, which we do not determine, we are satisfied that being limited to a time subsequent to the writing and transmitting of the libel by mail, they were properly rejected. *Douglas vs. Tousey*, 2 *Wend.*, 291. The defendant Herman Holster having testified to the stealing of the horses between Saturday and Monday morning, stated that on Thursday morning Mrs. Jones told him she saw Simmons, the plaintiff, on Sunday night, ride the horses past her house, and followed him, and saw him go to the stable, and another man came out and got on the horses and rode them away. To this testimony there was no objection. The plaintiff, in rebuttal, called several witnesses to impeach the character of Mrs. Jones for truth and veracity ; the testimony was objected to by the defendants, and the objection was overruled, to which the defendants excepted. The testimony as to the statements of Mrs. Jones, if competent at all, was in mitigation of damages, by disproving malice in the defendants ; and if her general character in the community was such that she should not be believed, the defendants could not reasonably rely upon her statements. It appears that the witness and Mrs. Jones are neighbors, residing in the same vicinity. The evidence, we think, was competent to go to the jury. The Court in charging the jury, among other things instructed them that if they should find from the evidence that the defendant Herman Holster, after the publication of the alleged libel, knew that it had been published, and approved of it, or acquiesced in it, he was equally liable with the other defendant. To this portion of the charge the counsel for the defendant, Herman Holster, excepted.

Whether the subsequent ratification by the principal of an unauthorized act of an agent, in itself unlawful, and actually

Simmons v. Holster et al.

injurious to another, will operate to make the former liable as a trespasser, the authorities do not entirely agree. 2 *Green-leaf's Ev., Sec.* 68; 1 *Pars. on Contracts,* 52, *note P.* However this may be, this instruction is based upon the hypothesis that the libelous publication was unauthorized by the defendant Holster, and that he knew nothing of the publication until after it was made, and this would seem to be in accordance with the facts established by the testimony in the case. There is no evidence whatever showing an express or affirmative ratification or approval of the publication; if there is any evidence whatever of an acquiescence in it by the defendant Holster, it is by his mere silence, or neglect to disavow it, after it came to his knowledge, and we understand the instruction of the Court to be, that such a state of facts would constitute an acquiescence which would render the defendant liable; certainly a jury would be likely to so construe the language. It is true there may be circumstances under which mere silence would render a defendant liable for the act of another, done in his name, and for his benefit. But where as in this case, one person, without any authority, or color of authority, publishes a libel in the name of another, who has no knowledge of the publication until after it is made, we think the mere silence of the latter, or his neglect to disavow or repudiate the publication, will not render him liable, either civilly or criminally. There is in this case no prior agency between the parties; the defendant did not do or authorize the act complained of, and received no benefit as the result of it. He has not, nor has any one by his authority, done any act which injured the plaintiff, or benefited himself. We are unable to discover any legal principle, which, under these circumstances, requires the defendant upon acquiring knowledge thereof, to disavow the criminal act of a stranger, done in his name, or in the absence of such disavowal, holds him respon-

sible for such act.   We think the charge was erroneous, and calculated to mislead the jury.

Judgment reversed and a new trial ordered.