Dawson and Campbell v. Holt.

## DAWSON and CAMPBELL v. L. B. HOLT.

1. LIBEL. *Ratification.* A person may adopt and ratify an unauthorized signature of his name to a libelous publication.

2. SAME. *Same.* Mere silence in relation to a libel published over a person's signature, and a failure to disavow it to the injured party within a reasonable time after knowledge of the publishing, are not a ratification of the act as a matter of law, even in a case where the person had signed a writing for publication of which the article published was a condensation and material modification, and had refused to publish a denial. They were facts from which an actual ratification might be found.

3. SAME. *Evidence.* It is not error in a trial for libel to refuse to allow the defendant to prove that he had uniformly denied that he had signed or authorized the libelous publication, unless the denial was made in the presence of the plaintiff, or brought to his knowledge.

4. SAME. A publication which contains a single false libelous statement is a libel, although it may contain defamatory statements which were unauthorized, true, or not proved.

5. SAME. *Agent.* Where authority is given to an agent to publish libelous words, and a publication is caused to be made by that agent in substantial correspondence with these words, the principal will be liable.

Dawson and Campbell *v.* Holt.

6. SAME. *Same.* Authority to publish a writing to the effect that a person is a troublesome fellow to his neighbors, and has made a particular attempt to hire another to swear falsely, will not authorize a publication that the person is a pest to the community and that there is now overwhelming evidence on file clearly establishing his guilt of subornation of perjury.

FROM COCKE.

Appeal in error from the Circuit Court of Cocke county.　J. G. ROSE, J.

W. J. McSWEEN and G. W. PICKLE for Dawson.

W. W. LANGHORNE and H. H. INGERSOLL for Holt.

COOPER, J., delivered the opinion of the court.

Holt sued Drury Dawson, W. H. Campbell and several other persons for libel. The judge, who tried the cause without a jury, found in favor of the other defendants, but rendered a judgment against Dawson and Campbell, from which they appealed in error.

Holt having had a lawsuit with one Livingston, undertook to denounce him in a publication in the county paper, signed with his initials. Thereupon Dawson, Campbell and others signed a written communication to the same newspaper sustaining the character of Livingston and denouncing that of Holt, stating, among other things, that Holt was a pest or troublesome fellow to his neighbors, and that there was evidence on file that he had tried to hire a negro to swear falsely. This paper was entrusted to Livingston for publication. He carried it to a correspondent

Dawson and Campbell *v.* Holt.

of the newspaper, who said it was too long, rewrote it, and signed the names of the appellants and others, without direct authority from them, to the new draft. The writing thus prepared and signed was published in the newspaper. It stated, among other things, that the signers knew Holt to be "a man of corrupt principle, noted for meanness and villiany, and has ever been a pest in our community. He has no regard for his word, and there is now overwhelming evidence on file in the clerk's office clearly establishing his guilt of subornation of perjury." The action was for the libel in the printed article, setting the article out in *hæc verba.* There is no proof to show the contents of the document actually signed by the defendants, except to the extent above stated, so far as it related to Holt. The document was not produced, although notice to produce it seems to have been served at least upon the defendant Dawson. The proof shows that both of the defendants saw the publication shortly after it was made, and that neither of them ever disavowed the publication to Holt or by counter publication, and there is proof tending to show that Dawson refused to disavow it to a person sent by Holt to see him on the subject, and said he had signed it.

"The court holds," says his Honor the trial judge, in the bill of exceptions, "that defendants Drury Dawson and W. H. Campbell are responsible for the published libel, not by reason of any previous direction or authority to publish that particular article, but by their subsequent assent, and ratification of the assumed

authority from them to do so, resulting from their acquiesence and failure to disavow the act of publication in their name within a reasonable time after knowledge of the facts. Under the circumstances it was their legal duty to have promptly disavowed the publication; and this disavowal should have been to the plaintiff, and in such manner as to repair the injury so far as they reasonably could. Mere statements to other persons than the plaintiff, in casual conversations about the matter, that the published paper was not the same, or anything like the paper they signed for publication, did not fill the measure of their legal duty to the plaintiff."

Treating the article sued on as neither signed by the defendants, nor published by their authority, his Honor states the law to be that they might ratify the use of their names in the signing and publication by their subsequent conduct, and that they did in fact ratify it by their assent thereto, and failure to disavow the act within a reasonable time after knowledge of the fact. And he distinctly says that the disavowal should have been made, under the circumstances, to the plaintiff, and in such manner as to repair the injury so far as they could. The counsel of the appellants insists that there can be no ratification of a previously unauthorized tort, and that the failure to disavow in the mode stated would not in law be a ratification.

If his Honor meant to lay it down as a general proposition of law that every person whose name is used without authority in the publication of a libelous

article in a newspaper, ratifies the act by failing to disavow it to the party injured in a reasonable time after knowledge of the fact, we think he was clearly in error. We know of no principle of law which imposes upon an innocent person, whose name may have been thus used, the duty of prompt diligence in disavowing the act to the injured party, under the penalty, in case of failure, of being held to be the guilty party. A denial of the act on all proper occasions, or a public disavowal in the same newspaper, or in some other mode, would be sufficient to protect an innocent party. His Honor, no doubt, intended to confine his law to the particular case before him, where the defendants had signed a writing for publication of which the article published was a condensation and material modification, and where one of the defendants, when approached by an agent of the injured party, had refused to make any concession, and asserted that he could prove more than he had put his name to. But even in such a case the charge of the law is too broad. Mere silence, and a failure to disavow the act to the plaintiff, would not, under the circumstances, amount to a ratification as a matter of law. They would, at most, be facts from which in connection with the other facts and circumstances, an actual ratification might be found. A tort committed without positive previous authority may be ratified, and especially if the tort be a libelous publication in one form, which the party had authorized to be published in another form: *Bryan* v. *McGuire,* 3 Head, 530. And there can certainly be no reason why a person

may not adopt or ratify a previously unauthorized sig· nature of his name to a libelous instrument, as well as a previously unauthorized signature to any other written instrument. If his Honor, the trial judge, upon a general finding against the appellants, had announced as the law by which he had been guided, that there might be a ratification of a libelous publication purporting to be signed by him, and that the fact that the party had authorized the publication of a similar article from which the actual publication had been condensed, and had failed to disavow, it, might be looked to, in connection with the other facts and circumstances, to determine whether there had been a ratification, his finding would have been as conclusive as that of a jury, and would have been warranted by the facts.

The difficulty in this case is that, although we may treat the judgment below as a general finding of the facts against the defendant, the trial judge has not limited his statement in the bill of exceptions to the principles of law which guided him, but has interpolated certain findings of fact. He finds, he says, that the defendants Dawson and Campbell had signed for publication in the newspaper an article in writing vindicating the character of Livingston; that this article was not in fact published, and that its exact purport was not shown; that this article was rewritten, reduced in length, "and perhaps materially modified, the names of defendants signed thereto without authority, and thus published." These two defendants, he adds, did not in the first instance authorize the publication

Dawson and Campbell *v.* Holt.

made, but did sign for publication a different paper, "the contents of which are not shown." There is some warrant, from these statements, in the position of the counsel of the appellants that the trial judge did not find any previous authority by the defendants for the publication of the libel sued on, nor a subsequent ratification in fact, but only a ratification as matter of law from the failure of the appellants to disavow the publication to the plaintiff, according to the legal duty, in his Honor's opinion, imposed upon them by law.

In this view, it becomes necessary for us to examine the facts, and render such judgment as the court below should have rendered: . *Wheeler* v. *State*, 9 Heis., 393. It would be otherwise, however, if legal testimony was rejected, and this, it is insisted, was done. The plaintiff introduced one witness, who testified that he had a conversation with defendant Dawson about a week after the publication, and said to him that people ought to be careful about what they signed, to which defendant replied that he had signed it, and would do it again. Another witness proved, that, at the instance of plaintiff, he had called on defendant Dawson, and told him that if he did not sign the paper published, and would publish the fact in the same paper, the plaintiff would be satisfied; that defendant replied he did sign the paper, and could prove twice as much as was in it. A third witness deposed that he had called upon Dawson after the suit was brought, with a view of making peace, and that defendant said to him, he would not give a nickel for it, that he could prove twice as much as the paper contained which he had

signed. The defendant Dawson, when examined as a witness on his own behalf, testified that in these conversations he referred to the paper he had actually signed, not the paper published. He was then asked by his own counsel, if he had not stated to other persons than the witnesses of the plaintiff, that he had not signed the article published, or authorized its publication. The court, upon the objection of the plaintiff, excluded the evidence. The defendant Campbell, when examined as a witness by Dawson, was asked if he had heard defendant Dawson deny the published paper in his presence, and in the presence of others. He was also asked if he himself did not uniformly deny that he signed the published paper, or authorized its publication to all persons after it came to his knowledge. Upon objection by the plaintiff, the witness was not allowed to answer these questions, except as to conversations he may have had with, or in the presence of the plaintiff, or which may have been communicated to him.

It can scarcely be seriously contended that a defendant to a libel suit can be allowed to introduce as evidence on his behalf his own denial of guilt to third persons. That would be to make evidence for himself: *Rea* v. *State*, 8 Lea, 356. Such denials would afford an easy way of manufacturing testimony either to disprove the charge, or in mitigation of damages. Besides, there was no contest between the parties, or conflict in the testimony in relation to the facts touching the proposed denials. The proof was clear that the defendants had not signed the published paper, nor

previously authorized its publication as a whole. The statements of the defendants as witnesses in that regard were not called in question. The testimony was, therefore, not competent in corroboration of Dawson as a witness, by showing that he had made consistent statements, while the facts were recent. The conflict between the plaintiff's witnesses and Dawson was as to what passed between them, and the credit of neither was attacked by proof of contradictory statements or otherwise.

The real issue between these litigants was whether the defendants Dawson and Campbell authorized the publication, not of the entire article published, but of the libel on Holt contained therein, or subsequently ratified the publication. A publication which contains a single libelous statement which is false is a libel, although it may contain defamatory statements which are true, or, it may be added, other statements which are unauthorized or not proved: *Melton* v. *State*, 3 Hum., 389; *Hancock* v. *Stephens*, 11 Hum., 507. The appellants did sign, and deliver to Livingston for publication in the county newspaper, a writing purporting to be a communication from them, and the publication actually made was the result of the action of the agent. Dawson himself testifies that the original paper signed by him "did contain a statement that Holt had tried to have a negro boy to swear a lie, and also said something about Holt being a troublesome fellow to his neighbors." Campbell testifies that there was in the paper, "something about his trying to get a negro to swear false, and about Holt being a troublesome

man, and always wanting to law his neighbors." Mc-Sween, who drafted the article published from the original writing, says that the latter "used the word pest, and also stated that there was evidence on file showing that plaintiff had tried to hire a negro to swear falsely." The published article states that the signers knew Holt "to have been a pest in our community," and that "there is now overwhelming evidence on file in the clerk's office clearly establishing his guilt of subornation of perjury." The language of the publication is libelous: *Haws* v. *Stanford,* 4 Sneed, 520; *Dunn* v. *Winters,* 2 Hum., 512; *Williams* v. *Karnes,* 4 Hum., 9. So is the language shown by the witnesses to have been used in the original writing, but the language of these latter and of the publication are not identical.

The rule as to a variance between the words alleged in pleading and the words used, is that it is sufficient if they correspond substantially: *Pursell* v. *Archer,* Peck, 317; Townshend on Sl. and L., sec. 364. But it seems that the words alleged cannot be proved by showing that the defendant published the same meaning in different words, even if equivalent and of similar import: Townshend, sec. 364; Per Totten, J., in *Hancock* v. *Stephens,* 11 Hum., 508. Upon indictment, the libel must be set out according to its tenor and effect, not substance: *State* v. *Brownlow,* 7 Hum., 63; *State* v. *Smith,* 7 Lea, 249. But it has been held that one who writes an article in English, and employs another person to translate it into German and publish it, will be liable if the German article so published is libel-

Dawson and Campbell *v.* Holt.

·ous, although the translation is inaccurate: *Wilson* v. *Norman*, 27, Wis., 598. It has also been held in case for written slander, where the reporter of a newspaper proved that he had written down from the defendant's mouth the statement which he afterwards sent to the editor, and that a paragraph which afterwards appeared in the papers was in substance the same, that that was so published might be considered as published by the defendant: *Adams* v. *Kelly*, 1 Ry. & M., 158. The authorities are in a hopeless confusion as to what will, or will not be a material variance between the words alleged and the words written. But where authority is given to an agent to publish libelous words, and a publication is caused to be made by that agent in substantial correspondence with those words, we are inclined to hold the principal liable. In this case, however, the libel authorized to be published was, in substance, that the plaintiff was a troublesome fellow to his neighbors, and had tried to hire a negro to swear falsely. The publication was that the plaintiff was a pest to the community, "and there is now overwhelming evidence on file in the clerk's office clearly establishing his guilt of subornation of perjury." The authorized words only imported an attempt at subornation of perjury, while the published words aver the existence of overwhelming evidence of the commission of the offense. The publication was not authorized by the writing signed by the appellants.

There is no evidence against the appellant Campbell that he ever ratified the libel as published. But we think the evidence does show such ratification by

38—VOL. 11.

the appellant Dawson.    The judgment will, therefore, be affirmed as to Dawson, and reversed as to Campbell, and judgment rendered in favor of the latter for his costs.