EMMA PLECKER, Appellee, v. R. T. KNOTTNERUS, Appellant.

**LIBEL AND SLANDER:** Actions—Negligence As Defense. One who
1 files an information charging another with being insane, and does not believe at the time that the charge is true, and who appears at the hearing and actively supports the charge, cannot avoid the

presumption of legal malice and damages by a plea that he signed the information without reading it, and under a misunderstanding as to its nature.

**LIBEL AND SLANDER: Damages—Exemplary Damages.** The publication of a known false libel renders the offender liable for exemplary damages.

**LIBEL AND SLANDER. Damages—Excessive Verdict.** Verdict for $5,000 for libel in filing an information charging insanity held excessive, and conditionally reduced to $1,000. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 323 *et seq.*)

**Headnote 1:** 37 C. J. p. 142 (Anno.) **Headnote 2:** 37 C. J. pp. 124, 126. **Headnote 3:** 37 C. J. p. 128.

*Appeal from Washington District Court.*—CHARLES A. DEWEY, Judge.

MARCH 9, 1926.

ACTION for libel. From a judgment on a verdict for plaintiff, the defendant appeals.—*Affirmed on condition; otherwise reversed.*

*Lloyd L. Duke, Charles J. Wilson, and Edmund D. Morrison,* for appellant.

*Livingston & Eicher,* for appellee.

VERMILION, J.—The alleged libel consisted of an information, signed by the appellant, charging that the appellee was insane, and a fit subject for treatment in the hospital for the insane. It was alleged that the information was filed in the office of the clerk of the district court and published to the clerk and deputy clerk; that the charge was false and untrue, and was so filed and published maliciously and without probable cause, and for the purpose of injuring the plaintiff and to deprive her of credit and reputation and to cause it to be believed that she was insane.

1. LIBEL AND SLANDER: actions: negligence as defense.

The answer alleged in some detail that defendant consulted the county attorney concerning threats alleged to have been

made by plaintiff against his wife, and was instructed by him to go to the clerk's office and sign a legal paper which the clerk would prepare for him; that he went to the clerk's office and informed the deputy clerk that he had been sent there by the county attorney to sign a paper to be there prepared; that the deputy clerk communicated with the county attorney by telephone, and then informed defendant that the paper she prepared was the one the county attorney had directed him to sign, and he thereupon signed the same without reading; that he informed the deputy clerk that he did not think plaintiff was insane, and would not sign any papers so stating. He denied malice, and alleged that the inquisition upon the information was held on the demand of the plaintiff for a hearing thereon.

I. The court below, in the instructions to the jury, defined libel in the language of the statute, and instructed that the publication of a libel without justification, privilege, or lawful excuse was presumed to be malicious, and damage to the person libeled was presumed, and that, as the defendant did not claim as a defense matter constituting a legal justication, privilege, or lawful excuse, the verdict must be for the plaintiff in some amount; and, as to the matters set up in the answer, instructed that they did not constitute a defense, but that, if they were found to be true, they should be considered in mitigation of damages.

The answer, in effect, if not directly, admitted the signing and filing of the information—the writing and publication of the alleged libel. It did not in terms plead privilege, nor did the allegations of fact amount to a plea of privilege. There was no allegation in the answer nor claim in the proof that the information was signed and filed in the honest belief that the charge was true. In *Comfort v. Young*, 100 Iowa 627, we said of a charge of libel based on an information charging that the plaintiff was insane:

"Persons have the undisputed right to file such informations as the one referred to, when made in good faith, and in the honest belief that the statements therein made are true. But one cannot use such instrumentalities for the express pur-

pose of * * * indulging his passions, without making himself answerable to the law.''

See, also, *Hulbert v. New Nonpareil Co.*, 111 Iowa 490.

There was no plea of justification, or that the charge was true. In both pleading and proof it was, in effect, admitted that the appellee was not insane, and that appellant did not believe she was. She was discharged on the hearing before the commissioners.

The substance of the answer, in addition to the denial of malice, was that appellant signed and filed the information without ascertaining its contents, and on the advice of counsel.

There was no claim, either in the pleadings or proof, that appellant ever attempted to dismiss the charge, or to withdraw the information; and it appeared without dispute that he appeared, in response to a notice of the date set for the hearing before the commissioners, and testified in support of the charge. There was clearly a recognition and adoption of the libel by appellant as emanating from him. *Dawson v. Holt*, 11 Lea (Tenn.) 583 (47 Am. Rep. 312); *Croasdale v. Bright*, 6 Houst. (Del.) 52; 37 Corpus Juris 13.

With the information on file in the clerk's office, the appellee, as she had a perfect right to do, demanded a hearing. When appellant was called, and testified in support of the information filed by him, it would be a strange doctrine, indeed, that would permit him to say in defense of the charge of libel that he did not know what he signed. Upon his own testimony, the most favorable view possible of his conduct is that he was guilty of negligence in signing and filing the information without reading it. But clearly, it would be no defense that he negligently wrote and published a libel. In the *Hulbert* case, supra, where the libelous article falsely, but through mistake of fact and after some investigation, identified the plaintiff as the prosecutrix in a prosecution for seduction, we said:

''To publish a libelous charge that is false, against another, is never privileged, when the falsehood originates with the publisher.''

If, as claimed by appellant, he told the deputy clerk and testified on the hearing before the commissioners that he did not believe the appellee was insane, this tended to establish his

bad faith, not to afford him a defense to the action for libel based on the charge in the information that she was insane.

Advice of counsel, if it could be a defense in such a case, could not avail, if the person making the charge did not act in good faith. *Johnson v. Miller*, 82 Iowa 693.

The information, if the charge was false, was libelous. Malice in law, as distinguished from actual malice or ill will toward the plaintiff, and damage were presumed. Neither the answer nor the evidence presented any defense to the action, and the court properly so instructed the jury, and directed that the verdict should be for the plaintiff, in some amount. *Hulbert v. New Nonpareil Co.*, supra; *Morse v. Times-Republican Printing Co.*, 124 Iowa 707. The averments of the answer amounted to no more than a plea of mitigation of damages, and the lower court properly so instructed.

II. The assignments of error do not direct our attention to any specific rulings on the admission of testimony that are claimed to have been erroneous. Those complained of in argument relate to the acts of the clerk in failing to issue a warrant for the apprehension of the appellee upon the filing of the information, to the appellant's fears that appellee would injure his wife, and to his wife's condition of health. The witnesses to whom these questions were addressed testified to such matters in other portions of their testimony. No error appears here.

III. It is said that the verdict of $5,000 is excessive. With this we agree.

There was testimony that the information was read to appellant; that he was told that, if appellee was found to be insane, she would be sent to an asylum, and was asked if that was what he wanted to file; and that he then signed the information. This, in connection with his admitted belief that appellee was not insane, would clearly warrant a finding of actual malice and exemplary damages.

2. LIBEL AND SLANDER: damages: exemplary damages.

The court instructed that appellee could only recover, as actual or compensatory damages, such as were caused by the publication of the libel to the clerk and deputy clerk, as alleged

3. LIBEL AND
SLANDER: dam-
ages: excessive
verdict.
in the petition. The evidence shows quite satisfactorily that the clerk, after an interview with the appellee, told her, before the hearing, that he did not think she was insane, and that he would not do anything further in the matter. He testified that the incident was then closed, so far as he, as the clerk and a member of the commission, was concerned. Without implying that the clerk had power to thus dispose of the matter, or questioning the right of appellee, notwithstanding such assurance, to insist upon a hearing, we are of the opinion that, under such circumstances, and under the instructions of the court, denying a recovery for any damages caused by the subsequent public inquisition, the verdict of $5,000 cannot be sustained. Upon the whole record, we think a verdict in excess of $1,000 ought not to stand.

If appellee shall, within twenty days from the filing of this opinion, file in this court a remittitur of all of the judgment in excess of $1,000 and interest, the judgment will be affirmed, but otherwise reversed.—*Affirmed on condition; otherwise reversed.*

DE GRAFF, C. J., and FAVILLE and ALBERT, JJ., concur.