**Frank W. PARKS and John Patterson, Appellants,**

v.

**The NEW YORK TIMES COMPANY, Appellee.**

**No. 19112.**

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1962.

Rehearing Denied Nov. 19, 1962.

Ainsworth, District Judge, dissented.

M. Roland Nachman, Jr., Sam Rice Baker, Ralph Smith, Jr., Clinton E. Moore, R. E. Steiner, III, Montgomery, Ala., for appellants, Steiner, Crum & Baker, Calvin M. Whitesell, Montgomery, Ala., of counsel.

T. Eric Embry, Birmingham, Ala., Thomas F. Daly, New York City, Beddow, Embry & Beddow, Birmingham, Ala., Lord, Day & Lord, New York City, for appellee, New York Times Co., Herbert Wechsler, Saul L. Sherman, Ronald S. Diana, New York City, Roderick Mac-Leod, Birmingham, Ala., of counsel.

Before BROWN and BELL, Circuit Judges, and AINSWORTH, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from an interlocutory order of the District Court pursuant to Title 28 U.S.C.A. § 1292(b) denying motions to remand. The opinion of the District Court which accompanied the order is reported in 195 F.Supp. 919 (M.D. Ala., 1961). The separate cases of the two appellants were consolidated for hearing in the District Court and here on appeal.

Appellant Parks sued The New York Times Company, a non-resident of Alabama and four individual residents in the Circuit Court of Montgomery County, Alabama for libel growing out of an advertisement appearing in the March 29, 1960 issue of The New York Times. The names of the resident defendants appeared as endorsers of the material contained in the advertisement. The suit of appellant Patterson was in the same court and on the same basis. A more complete statement of the background facts is set out in our decision on a suit brought by the resident defendants against appellant Patterson seeking relief, inter alia, from the consequences of these and other libel suits. Abernathy et al. v. Patterson, 5 Cir., 1961, 295 F.2d 452.

The question before us is whether appellee, The New York Times Company, could remove the suits of appellants to the Federal Court. The statutory period within which to remove had long since expired. Title 28, § 1446(b). Removal was sought under the doctrine of fraudulent joinder of the resident defendants. And, of course, the merits of the case including whether the advertisement was in fact libelous are not before us.

Five libel suits arose from the advertisement. All were filed in the state court against appellee and the four individual defendants, except that in the Patterson suit a Georgia resident was also named as a party defendant. The plaintiffs in the respective suits were Patterson, the Governor of Alabama, three city commissioners of Montgomery, Messrs. Sullivan, James and Parks, and Sellers, a former city commissioner.

The Sullivan and James cases have been tried. A $500,000 verdict for plaintiff against all of the defendants was rendered in the Sullivan case on November 3, 1960. A like verdict was rendered in the James case February 1, 1961. A motion for new trial filed by The Times was denied on March 17, 1961 and that case is now on appeal in the Supreme Court of Alabama. New York Times Co. v. Sullivan, 114 So.2d 25. A similar motion in the James case was pending when these cases were removed on April 13, 1961.

The petition for removal was based on diversity of citizenship between the plaintiffs in each case and The New York Times Company, Title 28, § 1441(a). We are not concerned with removal of an action based on the constitution or laws of the United States, nor is there any claim of a separate or independent claim being joined. Title 28 U.S.C. A. § 1441 (b), (c). It was the position of The Times that it did not know of the fraudulent joinder until after the trials of the Sullivan and James cases in the state court when it became clear from uncontroverted evidence that the resident defendants had not in any manner authorized or consented to the using of their names as endorsers of the advertisement which gave rise to the alleged libel. The motions to remove set out explicitly that it became apparent to The Times after these trials and after the argument of counsel for plaintiffs to the juries therein that the theory of liability against the resident defendants was based on an assumed duty on the part of the resident defendants to disavow any connection with the advertisement.

The District Court determined that there had been a fraudulent joinder and denied the motions to remand. The evidence before the court on the motions was that adduced in the Sullivan case, as contained in a transcript of that trial introduced by agreement, the deposition of the Georgia defendant in the Patterson case which the trial court ordered taken ex moro motu by a court appointed amicus curiae. He also concluded that The Times had acted timely in the premises, a question we do not reach.

We take as a general guideline the admonition of the Supreme Court in Shamrock Oil & Gas Corp. v. Sheets, 1940, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214, a unanimous opinion, in reference to the administration of the removal statutes:

"* * * The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. 'Due regard for the rightful independence of state governments which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Healy v. Ratta, 292 U.S. 263, 270 [78 L.Ed. 1248, 1253, 54 S. Ct. 700]."

And the rule applicable to fraudulent joinder as it obtains in this case was set out for this court in an opinion by Judge Sibley in Dudley v. Community Public Service Co., 5 Cir., 1939, 108 F. 2d 119, a case involving a petition for removal where a resident was joined with a non-resident defendant and doubt existed as to the liability of the resident defendant because of lack of exact precedent:

"* * * We therefore hold that on the allegations of the petition there appears to be a probable case in law against Short, as well as against the Community Public Serv-

ice Company, notwithstanding the application to them of the Compensation Act. By consequence it does not appear that Short was fraudulently joined. See Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544. That the defeat of removal might have been a motive in joining Short is not important, if in good faith he is sought to be held liable. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904, and cases cited. Though for lack of an exact precedent there may be doubt whether Short is legally liable, that would not render his joinder fraudulent. Morris v. E. I. Dupont Co., 8 Cir., 68 F.2d 788; Wells v. Missouri Pac. R. Co., 8 Cir., 87 F.2d 579. The case ought to have been remanded for trial in the State courts."

Cf. Stone v. Foster, N.D.Ark., 1958, 163 F.Supp. 298, where removal on the basis of fraudulent joinder was premised on the fact that no case was made out in the state court where the trial resulted in a mistrial against the defendants. The motion to remand was granted principally because the case against the resident defendant was submitted by the court to the jury. There was no directed verdict in his favor and the court felt that there must have been some testimony sufficient in the opinion of the Arkansas State Court to sustain a verdict for the plaintiff against the resident defendant.

In Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart, 1913, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473, Mr. Justice Holmes speaking for the court in an unanimous opinion laid down the following applicable rule:

"On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied."

Morris v. E. I. Dupont de Nemours & Company, 8 Cir., 1934, 68 F.2d 788 teaches that the determination of fraudulent joinder is to be based on whether there was a real intention on colorable grounds to procure a joint judgment. Doubt as to whether under the state law a case of joint liability is stated, or doubt with respect to the allegations concerning the resident defendants being false as when the question depends upon the credibility of witnesses or the weight of evidence will not render the joinder fraudulent. On the other hand, there must be some reasonable basis for believing that there is joint liability. The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous. And a joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of plaintiff that there was joint liability.

Wells v. Missouri Pacific R. Co., 8 Cir., 1937, 87 F.2d 579, holds that the burden on a motion to remand to the state court is on the party who removed to the federal court, and that a complaint in the state court is good as against a motion to remove if it evidences a real intention to get a joint judgment, and if colorable ground for such judgment is shown. It follows Morris v. Dupont, supra, in the view that doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having original jurisdiction of the case and are not to be determined in a removal proceeding.

The doctrine is stated as follows in Moore's Commentary on the United States Judicial Code, Par. 0.03 (35), p. 234–236:

"* * * The usual case in which charges of fraudulent joinder are

made is that in which the plaintiff, a citizen of the state of the forum, joins a resident citizen with a non-resident defendant. Whether the joinder is fraudulent or not is said to depend on whether the plaintiff really intended to obtain a judgment against both defendants \* \* \* The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If there is doubt as to whether the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded \* \* \* If the plaintiff has stated a cause of action against the resident defendant, that is normally sufficient to prevent removal. The motive for joining such a defendant is immaterial, even when the defendant is judgment-proof, or when the plaintiff is ultimately found not to have had a cause of action against the defendant. Bad faith in bringing the action is not material; bad faith in the joinder is necessary. The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false."

■ A claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence. Barron and Holtzoff, Federal Practice and Procedure, § 103, p. 478, citing McLeod v. Cities Service Gas Company, 10 Cir., 1956, 233 F.2d 242. That case holds that bad faith in join-

ing a resident defendant for the sole purpose of preventing removal may be shown by any means available but must be proven with certainty. The denial of remand was affirmed as not being clearly erroneous.

We pointed out in Bentley v. Halliburton Oil Well Cementing Company, 5 Cir., 1949, 174 F.2d 788, that the doctrine of fraudulent joinder had its inception in the courts, and originally was a judicial pronouncement intended to protect non-resident defendants from any misstatement of fact or misjoinder of parties or causes of action knowingly made by plaintiffs for the purpose of conferring jurisdiction upon or defeating removal to a federal court. That case also points out what we think still to be the law; absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination.[1]

■ On the strength of these authorities, and for the purposes of this case, we take the rule to be that there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard. One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming. Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart, supra. And we measure the decision of the District Court against it.

The state trial judge in Sullivan permitted the question of ratification to go

1. In Weeks v. Fidelity and Casualty Company of New York, 5 Cir., 1955, 218 F. 2d 503, we considered 28 U.S.C.A. § 1446 (b) as being a congressional enactment to make uniform the time for filing petitions for removal, but the time limitation as being merely modal or formal and not jurisdictional.

And fraudulent joinder is to be distinguished from cases which become removable because of some action on the

part of the plaintiff such as dismissing the resident defendant. Powers v. Chesapeake & Ohio Railway Company, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673. This case also stands for the proposition that a cause may be removed when such occurs, and this would include discovery of fraudulent joinder if the petition to remove is filed at the earliest possible opportunity after the action assumes the shape of being removable.

to the jury over the objection of the resident defendants of insufficiency of evidence.[2] This alone, in the ordinary case is probably enough to avoid a charge of fraudulent joinder. Cf. Stone v. Foster, supra. Although decisions of nisi prius courts are not binding on us as precedents in applying local law in diversity cases, King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608, there is no reason why their rulings may not be considered on the question of good faith in a matter such as this.

But we need not, and do not, rest our decision solely on this fact. The evidence before the District Court on the motions showed that, although the names of the resident defendants appeared on the advertisement, they denied any knowledge of the advertisement until they received letters demanding retraction some two weeks later. They denied having consented to the publication of the advertisement and this was corroborated by the testimony of the witness who added their names to the advertisement as endorsers, that he did so without communicating with them. They failed to respond in any way to the letters of retraction and never repudiated, renounced or disavowed the use of their names, or the advertisement itself.

The plaintiffs rely for their case on ratification or adoption on the silence of the resident defendants under circumstances requiring a denial. Other than the silence, the only evidence which in any way substantiates ratification is the sworn complaint filed by the resident defendants in Abernathy v. Patterson, supra, in which it is alleged that the advertisement was for their benefit and support, and the deposition of the Georgia defendant in the Patterson case in which the testimony was that an organization, of which he was president and in which the resident defendants were officers, received some of the funds raised through the medium of the ad.

The question would be whether the silence in the face of the inculpatory charges contained in the demand for retraction together with the circumstances that the advertisement was for the benefit of defendants and that some of the funds derived therefrom went to the organization through which defendants carry on their activities rose to the level, as a matter of law, of a sufficient basis from which a jury could infer ratification or adoption. The state trial judge in effect ruled that it did. In a proceeding of this nature we need not decide the question. We need only decide whether there was a reasonable basis in law and fact for such a contention in the

2. At the conclusion of the evidence in the Sullivan case the resident defendants moved for an affirmative charge [directed verdict] on the ground of insufficiency of evidence to connect them with the advertisement. This was denied and the question of ratification or adoption of the advertisement was submitted to the jury on the following charge:

"Now, it is the contention of the plaintiff here that although you may believe, as to the four individual defendants, that they did not sign this advertisement and did not authorize it, yet it is the contention of the plaintiff, Sullivan, that the four individual defendants after knowing of the publication of the advertisement and after knowing of its content, ratified the use of their names, that is, that they approved and sanctioned this advertisement. In other words, the plaintiff, Sullivan, insists that there was a ratification of the advertisement and the use of their names as signers of the advertisement by the four individual defendants and we here define ratification as the approval by a person of a prior act which did not bind him but which was professedly done on his account or in his behalf whereby the act, the use of his name, the publication, is given effect as if authorized by him in the very beginning. Ratification is really the same as a previous authorization and is a confirmation or approval of what has been done by another on his account. Now, it is for you twelve jurors to say from all the evidence whether the four defendants ratified the advertisement now before you, that is, ratified the advertisement as I have defined the word ratification to you."

state court suits. Stated differently, was there substance to the claims?

In 53 C.J.S. Libel and Slander § 149, the question is treated as follows:

"* * * One who adopts or recognizes the publication of a libelous article purporting to emanate from him may be liable therefor; but mere silence on the part of one in whose name a libel is unauthorizedly published will not render him liable."

The authority for this first statement is Plecker v. Knottnerus, 1926, 201 Iowa 550, 207 N.W. 574. There the defense to a libel based on a charge of insanity of plaintiff was that defendant signed without knowing the contents of the document. The act of the defendant in testifying in support of the charge and in failing to withdraw the charge or attempt to dismiss it was held sufficient to show adoption of the libel. The latter statement is based on Simmons v. Holster, 1868, 13 Minn. 249, and Dawson v. Holt, 1883, 11 Lea 583, 79 Tenn. 583, 47 Am.Rep. 312. It is expressly pointed out in Simmons that the defendant sought to be held received no benefit from the libel. Dawson v. Holt, on the contrary, is to the effect that there is no duty upon the innocent person in such circumstances to disavow.

In the case of Goldfield v. Brewbaker Motors, Inc., 1951, 36 Ala.App. 152, 54 So.2d 797, cert. den. 256 Ala. 383, 54 So. 2d 800, a case involving an unauthorized purchase of an automobile by a wife in which the husband attempted to recover the automobile traded in, the evidence was that the husband talked with the automobile dealer several times without attempting to rescind the contract. The verdict and the judgment in the trial court for the dealer was affirmed on appeal. The court with reference to the doctrine of ratification adopted the doctrine enunciated by the Supreme Court of Alabama in Birmingham News Co. v. Birmingham Printing Co., 1923, 209 Ala. 403, 96 So. 336, as follows:

"Intention, express or implied, to ratify an unauthorized act is a material factor in an inquiry of ratification vel non by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another."

In the Birmingham News case ratification was claimed on the basis of several statements of account having been sent it for goods sold to another who had an office in the Birmingham News building and was engaged in a business enterprise with that company. The News remained silent in the face of receiving the statements. The court said that under the circumstances, if the News remained silent beyond a reasonable period after the receipt of the statement with respect to its thus asserted responsibility in the premises, such silence was evidence from which ratification might be inferred by the jury. See also I Restat. of the Law of Agency 2d, § 94, p. 244, Comments (a) and (b), and Appendix to § 94, Vol. III, p. 168; and IV Wigmore on Evidence, 3rd ed., § 1071 on adoption of the statement of another through silence where the circumstances call for a denial, and where the purported agent was theretofore a stranger to the purported principal.

On the other hand, there are cases in Alabama holding that self serving declarations contained in an unanswered letter will not be treated as admitted. Fidelity and Casualty Company of New York v. Beeland Bros. Mercantile Company, 1942, 242 Ala. 591, 7 So.2d 265. Cf. Denson v. Kirkpatrick Drilling Company, 1932, 225 Ala. 473, 144 So. 86. And the Birmingham News case, supra, makes it clear that more evidence is required to establish ratification where the unauthorized act is by one not an actual agent than where the act is by an agent in excess of his authority.

The facts and these authorities indicate that the question of liability of the resident defendants is a close one. It

could go either way. But, in either event, there is sufficient substance in the position of appellants to withstand a claim of fraudulent joinder. Appellants had the right to select their forum. Appellee failed to prove fraudulent joinder. It was error to deny the motions for remand. Having so held, it is unnecessary to, and we expressly do not, rule on the question of whether the motions to remove were seasonably filed.[3]

Reversed and remanded for further proceedings not inconsistent herewith.

AINSWORTH, District Judge (dissenting).

Fraudulent joinder is said to occur in removal cases based on diversity of citizenship when there is no reasonable basis for believing there is joint liability between the resident and nonresident defendants. The joinder of resident defendants is thus said to be for the sole purpose of fraudulently preventing the nonresident from exercising its legal right to remove the case from the state court to the United States district court.[1] A conclusion that the resident defendant was joined fraudulently is thereby justified. The burden of proof is on the defendant who seeks removal and it must be clear that under the law of the state in which the action is brought the facts asserted by plaintiff as the basis for liability against the resident defendant could not possibly create such liability,

---

3. By way of example, and citing the facts in the Parks case only, judgment was rendered in the Sullivan case on November 3, 1960. There was a stipulation between counsel on November 21, 1960 with reference to the transcript of the record in Sullivan, and in the Parks case, then pending, contemplating appeals to the Supreme Court of Alabama, which stipulation was approved by that court on December 9, 1960. There was a motion to quash service in the Parks case on December 16, 1960, which was denied on the same day. Interrogatories were served on The Times on January 31, 1961 and it was stipulated that the answers in the Parks case would be the same as in the Sullivan case. The judgment in the James case was rendered on February 1, 1961. On February 10, 1961 The Times filed a motion asking notice of the time and place of selecting the jury venire in the state court for the Parks case which motion was granted on the same day. On March 31, 1961 the jury venire was drawn in the presence of counsel for The Times and the case was set for trial on the merits on May 1, 1961. On March 17, 1961 the motion for new trial in the Sullivan case was denied. Petitions to remove in Parks and Patterson were filed on April 13, 1961. Parks moved to remand on the same date while Patterson removed to remand April 20, 1961.

The motions to remove alleged that the fraudulent joinder was known at the conclusion of the trials of the Sullivan and James cases. The District Court accepted the excuse for the long delay thereafter before filing the motions that counsel for The Times thought appellants here might produce some additional evidence and only gradually became aware that they would not, after which realization they moved promptly.

1. The Constitution of the United States provides for diversity jurisdiction in the federal courts. Article III, Section 2, "The Judicial Power shall extend to all Cases * * * between Citizens of different States * * *." Of course, the federal diversity jurisdiction was not limited to controversies commenced in the federal courts or the purpose of diversity jurisdiction would be defeated. Accordingly, the first Judiciary Act of 1789 contained provisions for removal from state courts to the federal courts, and a removal jurisdiction has existed ever since. 1 Stat. 73, § 12 (1789). In general see Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv.L.Rev. 49, 91 (1923). Railway Co. v. Whitton, 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871); Gaines v. Fuentes, 92 U.S. (2 Otto) 10, 23 L.Ed. 524 (1875); and Tennessee v. Davis, 100 U.S. (10 Otto) 257, 265, 25 L.Ed. 648 (1879), wherein the Court said: "It [removal] was exercised almost contemporaneously with the adoption of the Constitution, and the power has been in constant use since." However, the complete diversity requirement of Strawbridge v. Curtiss, 3 Cranch 267, 7 U.S. 265, 2 L.Ed. 435 (1806), greatly curtailed federal diversity jurisdiction and afforded an opportunity for plaintiffs to defeat federal jurisdiction. Strawbridge necessitated the development of the principle of fraudulent joinder.

and the asserted claim is therefore a sham and frivolous. Morris v. E. I. Dupont de Nemours & Company, 8 Cir., 1934, 68 F.2d 788. These are the legal principles of this court-made rule and with which there can be no dispute.

Where the joinder is without reasonable basis and it is clear that no liability exists on the part of the resident defendants, the joinder in a legal sense is held to be fraudulent. Johnson v. Kurn, 8 Cir., 1938, 95 F.2d 629.

"On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied." Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart, 1913, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473. And removability is determined as of the time of removal. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

In this matter the district court "has painstakingly studied all the evidence submitted and available" and has reached the conclusion "that from the evidence presented upon the motion to remand in each of these cases there is no legal basis whatsoever for the claim asserted against the resident defendants"; and the trial judge found that the defendant, The New York Times Company, had sustained the burden of proof "by clear and convincing evidence that compels the conclusion that the joinder in each of these cases of the resident defendants was without any reasonable legal ground." 195 F.Supp. 919, 922. The record in this case consisted principally of the complete transcript of the trial in the companion Sullivan case, the King deposition, and the sworn complaint in Abernathy v. Patterson filed in the same United States district court as the instant proceedings.

The district judge carefully analyzed the evidence to determine if there was any reasonable basis under the law of Alabama upon which liability of the resident defendants could be established and he found as follows:

"There is no dispute as to what the evidence at the Sullivan trial showed as to the alleged sponsorship by the resident defendants of the alleged libelous article. In the cases now before this Court neither plaintiff contends that at a trial of this action he could or would offer any additional testimony, with the exception of the plaintiff Patterson, who, through his attorneys, contended that he expected the evidence to develop from the defendant King that King was the president of the Southern Christian Leadership Conference, of which the other individual defendants were members of the executive committee, and that said individual defendants through the Southern Christian Leadership Conference specifically or impliedly authorized or ratified the publication of the alleged libelous article. The evidence shows that the article in question was placed in The New York Times by an individual named John Murray, who was acting for a committee to defend Martin Luther King, Jr. Murray inserted the names of the four resident defendants as sponsors of the article. They were neither officers nor members of the committee, and had not authorized the committee, or Murray, or The New York Times, or anyone else to use their names in such a manner. Neither resident defendant knew his name had been used until some time after the publication of the article in question. The theory that the article was authorized and that the individual resident defendants had authorized the use of their names through the Southern Christian Leadership Conference is without any evidentiary basis whatsoever. As a matter of fact, all the evidence is to the contrary and uncontradicted." 195 F.Supp. 919, 923.

The majority opinion apparently agrees with the principal findings of fact of the court below when it states: "Other than the silence, the only evidence which in any way substantiates ratification is the sworn complaint filed by the resident defendants in Abernathy v. Patterson, supra, in which it is alleged that the advertisement was for their benefit and support, and the deposition of the Georgia defendant in the Patterson case in which the testimony was that an organization, of which he was president and in which the resident defendants were officers, received some of the funds raised through the medium of the ad." It then states the question, was there substance to the claims against the resident defendants in the state court suits?

I do not believe there was, for it is clear that the resident defendants had no knowledge of the insertion of the ad claimed to be libelous until several weeks after its publication. The resident defendants, though associated with Dr. King in the Southern Chritian Leadership Conference, were not members of nor familiar with the "Committee to Defend Martin Luther King and the Struggle for Freedom in the South," which was responsible for insertion of the advertisement. The Conference and the Committee were entirely independent and separate groups and the resident defendants were not members of the Committee nor connected with it in any way. The King deposition disclosed that not even he authorized the use of his name in the advertisement in The New York Times (King deposition, page 80) nor does it appear that resident defendants in any way personally benefited from publication of the advertisement or the funds raised thereby, though some funds may eventually have been received by the Southern Christian Leadership Conference, of which they were officers. The circumstances here did not oblige them to issue a denial about the publication when demand for retraction was made by plaintiffs upon them. There is no evidence whatsoever on the part of the resident defendants of ratification by silence or otherwise of The New York Times' advertisement. In Birmingham News, 209 Ala. 403, 96 So. 336, cited by the majority, the Alabama Supreme Court held that "under the circumstances disclosed by the evidence" it would have been the duty of the defendant to communicate with the plaintiff within a reasonable time its denial of liability of an item of charge against defendant for printing and if "under these circumstances" the defendant remained silent beyond a reasonable period after receipt of the bill the silence would evidence ratification. But the facts in the cited case are vastly different from those here.

The court below found the facts on the motion for removal, as it was obligated to do, under Rule 52(a) of the Federal Rules of Civil Procedure 28 U.S.C.A. and unless these findings are "clearly erroneous" they should not be set aside. Findings of fact are not clearly erroneous unless unsupported by substantial evidence or clearly against the weight of the evidence or induced by an erroneous view of the law. Fleming v. Palmer, 1 Cir., 1941, 123 F.2d 749; Barron and Holtzoff, Federal Practice and Procedure, § 1133; McLeod v. Cities Service Gas Company, 10 Cir., 1956, 233 F.2d 242. I believe the district judge's findings were supported by substantial evidence and are correct. The federal courts should be equally vigilant to protect the right to proceed in federal court as to permit the state courts in proper cases to retain their own jurisdiction; the duties of the court to exercise jurisdiction when conferred and not to usurp it when not conferred are of equal obligation. Wecker v. National Enameling & Stamping Co., 204 U.S. 176, 186, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907); Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 85, 3 L.Ed. 38 (1809).

I would therefore affirm the judgment of the district court in these cases.

Rehearing denied; AINSWORTH, District Judge, dissenting.