(96 South. 336)

## BIRMINGHAM NEWS CO. v. BIRMINGHAM PRINTING CO. (6 Div. 862.)

(Supreme Court of Alabama. April 19, 1923. Rehearing Denied May 8, 1923.)

1. **Principal and agent ⬀101(1)—Facts held not to show advertiser was agent of newspaper in making contract for printing guide book for newspaper.**

That the business manager of defendant newspaper, which made a contract with O., whereby latter was to furnish an advertising guide for defendant, had knowledge of a plan to print the guide; and that plaintiff through O. had secured a contract to do the work, was not sufficient in itself to show that O.'s relation to defendant was that of an agent to consummate a contract with plaintiff to print the guide and thereby obligate defendant as principal to O.

2. **Principal and agent ⬀137(1)—Party invoking estoppel by holding out another as agent must show he was reasonably misled.**

The party asserting estoppel by holding out another as agent of the asserted principal must show he was not only misled, but that he had reasonable cause to believe that authority existed.

3. **Principal and agent ⬀99—When authority of one to act for another in given capacity will be conclusively presumed, stated.**

Where a person has held out another as his agent for a given capacity, his authority to such other to act for him in that capacity will be conclusively presumed to have been given, so far as necessary to protect the rights of third persons relying in good faith on such authority in the exercise of a reasonable prudence, where the act is within the apparent scope of the presumed authority.

4. **Principal and agent ⬀175(2)—Confirmation by asserted principal of contract of asserted agent makes asserted agent actual agent.**

Where plaintiff had an order from defendant newspaper for the printing of an advertising guide under a contract with O. and would not execute it until defendant confirmed the order in writing, a confirmation by defendant would operate to invest O. with the character of an actual agent of defendant in making the contract with plaintiff.

5. **Principal and agent ⬀99—Conduct of party from which relation of implied agency is imputed must be traceable to asserted principal.**

To constitute an implied agency, the acts or conduct of the asserted agent, from or through which such relation is to be imputed, must be legally traceable to the asserted principal.

6. **Principal and agent ⬀119(1)—Burden on party asserting implied agency to show principal assented to acts of claimed agent.**

Where plaintiff had an order to print an advertising guide for defendant newspaper, under a contract between plaintiff and O., an advertiser, to hold defendant liable, the burden of proof was upon plaintiff to show requisite assent of defendant to O.'s representations in purporting to represent defendant in the making of the contract with plaintiff.

7. **Principal and agent ⬀173(3)—Indorsement of check by defendant after payee's indorsement not evidence of his ratification of payee's contract with drawer.**

Where B. was the payee of a check, an indorsement thereon by defendant after O.'s indorsement *held* not to invest check with any evidential effect to show either acquiescence or ratification by defendant of O.'s act in respect to a contract O. made with the maker of the check.

8. **Principal and agent ⬀173(3)—Act of delivering, at building of asserted principal, books ordered by asserted agent, held not to show assent by asserted principal to act of asserted agent in ordering same.**

Where plaintiff had an order to print a guide for defendant under a contract plaintiff made with O., who purported to represent defendant, the delivery of the guide at defendant's building where O. occupied office space, was not an act effective to establish even inferentially defendant's assent to O.'s act in contracting with plaintiff for the guide.

9. **Principal and agent ⬀169(1)—Intent to ratify unauthorized act inferable from principal's conduct.**

Intention, express or implied, to ratify an unauthorized act, is a material factor in an inquiry of ratification vel non by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another.

10. **Principal and agent ⬀173(3)—Burden to prove ratification of unauthorized act is greater than proof of ratification of act exceeding authority.**

More evidence is required to establish ratification of an unauthorized act than ratification of an act in excess of agent's authority.

11. **Principal and agent ⬀170(1)—Silence of asserted principal under related circumstances may afford evidence justifying inference of intent to ratify act of asserted agent.**

While silence alone will not always suffice, even to invite a conclusion that ratification was effected, yet, under the related circumstances, shown to have been known to the asserted principal, silence may afford evidence from which the jury may infer an intent to ratify act of asserted agent.

12. **Principal and agent ⬀170(3)—Nonrepudiation of items in bill held to justify inference of ratification of asserted agent's contract to which items related.**

Where plaintiff had an order for the printing of a guide for defendant under an agreement between plaintiff and O., the asserted agent of defendant, and plaintiff rendered to defendant several monthly bills on which charge items based upon the printing of the guide

appeared, *held* that it was defendant's duty to communicate to plaintiff within a reasonable time its denial of liability for the guide imputed by the bill, and, if defendant remained silent beyond a reasonable period after receipt of the bill, such silence was evidence from which ratification might be inferred.

**13. Principal and agent ⬤▷170(3)—Repudiation, after six months, of items in bill for goods printed under contract with asserted agent held too late.**

Where plaintiff had an order for the printing of a guide for defendant under an agreement between plaintiff and O., the asserted agent of defendant, and plaintiff rendered to defendant several monthly bills on which charge items based upon the printing of the guide appeared, but defendant did not repudiate such items until six months elapsed, *held*, that the repudiation was made beyond a reasonable time after receipt of the bill.

**14. Principal and agent ⬤▷194(2)—Refusal to charge on issue whether asserted agent was authorized to enter into contract held reversible error.**

In an action for the printing of a Buyer's Guide for defendant under a contract by plaintiff with O., the asserted agent of defendant, defendant's requested charge that, if jury believed O. had no authority from defendant to bind the latter, and that defendant did not authorize O. to enter into such contract, then plaintiff could not recover, *held* justified under the evidence and refusal to give was error.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by the Birmingham Printing Company against the Birmingham News Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, section 6. Reversed and remanded.

Charges 6, 7, and 8, refused on defendant's request, are as follows:

"6. If you believe the evidence, Owen had no authority from defendant to bind defendant in a contract with the Birmingham Printing Company for the printing by the Birmingham Printing Company of the Buyers' Guide.

"7. If you believe the evidence, the Birmingham News Company did not authorize Owen to enter into a contract on its behalf for the printing of the Buyers' Guide.

"8. If you believe the evidence, Owen had no authority to bind the Birmingham News Company by entering into the contract with the Birmingham Printing Company, which is the basis of this suit."

Percy, Benners & Burr, of Birmingham, for appellant.

One dealing with an agent is bound always, at his peril, to ascertain the extent of his authority. Cummins v. Beaumont, 68 Ala. 204; 21 R. C. L. Princ. & Agt. § 85; 31 Cyc. p. 1323; Wheeler v. McGuire & Co., 86 Ala. 406, 5 South. 190, 2 L. R. A. 808. A person dealing with an agent cannot rely upon the declarations of the agent concerning his own agency. Alexander v. Ala. West. Ry., 179 Ala. 480, 60 South. 295. The mere acts of an assumed agent unaccompanied by evidence tending to show that the principal had knowledge thereof or assented thereto are not competent evidence upon the question of agency. Talladega Ins. Co. v. Peacock, 67 Ala. 253.

F. D. McArthur, of Birmingham, for appellee.

Whether an agency has been created is to be determined by the relations of the parties. Their private intention will not affect it. 21 R. C. L. p. 819; Hill, Fountain & Co. v. Helton, 80 Ala. 528, 1 South. 340; 31 Cyc. 1331; Gibson v. Snow Hdw. Co., 94 Ala. 346, 10 South. 304; Montgomery Furniture Co. v. Hardaway, 104 Ala. 100, 16 South. 29. Whatever evidence has a tendency to prove agency is admissible even though it be not full and satisfactory, and it is the province of the jury to pass upon it. 21 R. C. L. p. 820; Miller-Brent Lumber Co. v. Stewart, 166 Ala. 662, 51 South. 943, 21 Ann. Cas. 1149; Robinson & Co. v. Greene, 148 Ala. 439, 43 South. 797; Clark & Barker v. Eufaula Brick Co., 205 Ala. 545, 88 South. 669; U. S. Life Ins. Co. v. Lesser, 126 Ala. 584, 28 South. 646. Where a principal has placed a person in such position as to imply agency he is estopped to deny the agency. 21 R. C. L. 907; 31 Cyc. pp. 1219–1235; Shepherd v. Butcher Tool & Hdwe. Co., 198 Ala. 275, 73 South. 498. Ratification or adoption binds the principal, and the principal cannot ratify in part and repudiate in part. 21 R. C. L. 919; 31 Cyc. 1258 et seq.; Jones v. Atkinson, 68 Ala. 170; 31 Cyc. 1267.

McCLELLAN, J. The action is assumpsit, instituted by the appellee, a partnership conducting a printing business, against appellant. The complaint declared for work and labor done and on an account accruing from the printing by plaintiff of the "Book Form Birmingham News Buyers' Guide," to be mentioned. Judgment, on verdict, was awarded plaintiff (appellee).

On April 19, 1920, the appellant, Birmingham News, purchased the Birmingham Ledger. At that time the Ledger had a contract with A. V. Owen. This contract related to advertising in the Ledger and the republication of this matter, with other advertisements, in a "Buyers' Guide" in book form. Three days after the purchase of the Ledger by the News, the News made another, though similar, contract with Owen, in which it was recited that the News contract with Owen annulled the previous contract with the Ledger. The contract of Owen with the News obligated Owen to furnish the matter

for the "Birmingham News Buyers' Guide" for publication in two or more issues of the daily News; to secure all advertisements for the Buyers' Guide without cost to the News; to pay the News a stipulated price, on stipulated terms, for the publication of the matter in the News; to attend to all collections for advertisements for said Guide "except unpaid yearly accounts and any balance left unpaid from first two publications"; "to produce the Buyers' Guide in book form for free distribution," the number to be twice that of the advertisements for the Buyers' Guide; "to solicit all the advertisements in said Buyers' Guide for term contracts after the first publication at rates specified by the party of the second part, at no expense of party of the second part except that the party of the second part shall pay the party of the first part 25 per cent. commission on all accepted contracts, same to be applied to payment of first two publications of the Guide and balance to be paid quarterly as collected;" and to collect all doubtful contracts for the News; and the News obligated itself to furnish Owen office space in the Ledger building, typewriter and "four main lines" during the stipulated or later extended period of solicitation; to proofread the copy delivered for publication in the News; to publish notices regarding the Buyers' Guide, promoting its success; to make periodic settlements with Owen; "to loan" Owen "type or plates of the Guide for reproduction in book form"; and Owen obligated himself to pay the News 50 per cent. of any display advertising secured by the News for the "Book Form Buyers' Guide."

The controlling question is whether the defendant is liable for the acts of Owen in respect of the contract he made with plaintiff for the printing of the "Book Form Birmingham News Buyers' Guide."

[1] The contract between the News and Owen did not constitute the latter the agent of the former to contract for the reproduction of the Book Form Buyers' Guide. There is no evidence otherwise, or reasonable inference therefrom, tending to show that the News expressly constituted Owen its agent for that purpose. The allusion in the statement recited by plaintiff's representative as having been made by the business manager of the News (Clarke) was to the Ledger-Owen contract which was taken over by the News as the purchaser of the Ledger. That statement did not conduce, in any degree, to establish Owen's agency, for the News, to contract with plaintiff to print in book form the Buyers' Guide. Likewise the discussion between plaintiff's representative and Clarke did not contribute to establish Owen's agency or authority to contract with plaintiff, for the News, to print the Guide in book form. That both the mentioned statement and the discussion disclosed the business manager's knowledge of the plan to print the Guide in book form, and that the plaintiff was concerned in securing or even had secured the contract to do that work is clear; but that knowledge did not itself effect, in any degree, to show that Owen's relation to the News was that of an agent to consummate a contract with plaintiff to print the Guide and thereunto obligate the News as principal to Owen as agent.

There being no evidential basis in which to found a conclusion that Owen was in fact commissioned to represent the News in respect of the contract Owen made with plaintiff, the responsibility of the News for Owen's act in this particular must rest, if it exist, either in an estoppel precluding the News, the asserted principal, to deny Owen's representative character in the premises, or in an implied agency, resulting from conduct, attributable to the News, upon which the plaintiff was justified in concluding that Owen was the representative of the News in respect of the contract in question. 31 Cyc., pp. 1217–1221. As noted in the text cited, there is a material distinction between the doctrines applicable to an asserted principal's liability through estoppel and liability consequent upon such conduct as authorized a third party to act on the assumption that the asserted principal had invested the asserted agent with authority to engage for and in behalf of the asserted principal. 1 Mechem on Agency (2d Ed.) § 241; 31 Cyc. supra.

[2, 3] It is manifest, from the evidence presented by plaintiff, that it established no estoppel in consequence of which liability of the defendant, for the act of Owen, might be even contingently pronounced.

"Estoppel," by holding out another as the agent of the asserted principal, "is always a matter personal to the individual asserting it and he must therefore show that he was misled by the appearances relied upon. It is not enough that he might have been, * * * so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough."

The presently pertinent general rule is thus stated in section 246 of 1 Mechem (2d Ed.):

Whenever "a person has held out another as his agent authorized to act for him in a given capacity; or has knowingly and without dissent permitted such other to act as his agent in that capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent authorized to act in that capacity; whether it be in a single transaction or in a series of transactions his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who have relied

thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent authorized to do the act he assumed to do, provided that such act was within the real or apparent scope of the presumed authority."

[4] It appears from the plaintiff's evidence, referable to this particular inquiry, that, with knowledge of Owen's then recent arrival in Birmingham, the plaintiff would not proceed with the order for this printing until "we [plaintiff] had an order from the Birmingham News"; that "confirmation in writing" from or by the News was required by the plaintiff before entering upon the execution of the contract with Owen for printing the book. The effect of this testimony was to exclude the idea that plaintiff relied upon any act or conduct of the asserted principal, the News, other than that to be afforded by "confirmation in writing" from or by the News; which, if authoritatively afforded or given by the News, operated to invest Owen with the character of an actual agent in making the contract with plaintiff, and, in necessary consequence, refuted the notion that Owen's relationship was that of an apparent agent only. 31 Cyc. p. 1219. This inconsistency between the asserted estoppel and the restrictive effect of the testimony indicated removes from consideration, to plaintiff's advantage, of any basis upon which to conclude to defendant's liability through the doctrine of estoppel.

Is there any evidence or reasonable inference from evidence to support the plaintiff's contention of implied agency on the part of Owen, to the News as asserted principal, in the making of this contract with the plaintiff?

It conclusively appears from the evidence that, notwithstanding Owen occupied office space in the News buildings during this advertising campaign preceding and up to the time the contract was made by Owen and plaintiff for printing the "Birmingham News Buyers' Guide"; notwithstanding previous as well as current business relations, dealings, and exclusive credit between plaintiff and the News, including the fact that the business manager of the News (Clarke) had theretofore and recently given plaintiff orders for printing other matter for the News; notwithstanding Clarke's statement and discussion with plaintiff's representative, before alluded to; and notwithstanding the fact that the News supplied a part of the type to print the Guide in book form—the plaintiff was unwilling to proceed with the printing until "confirmation in writing" was secured from the News. The only "confirmation" received was this:

"Victor H. Hanson, Publisher. The Birmingham News Co., Proprietors. Frank P. Glass, Editor. The Birmingham News, The South's Greatest Newspaper. [Picture of News Building.] Birmingham, Ala., 5/26/20.

The B'ham Printing Company, City—Gentlemen: Your bid for printing the News Buyers' Guide & Numerical Telephone has been accepted and we will have some copy for you in a few days. Respectfully, A. V. Owen, Mgr. I/B."

As appears, this communication was signed by "A. V. Owen, Mgr.". There is no evidence that Owen was a manager of or for the News. The contrary was shown. There is no evidence that the use by Owen of the stationery of the News was either known to or authorized by the News.

[5] In order to constitute an implied agency—a form of actual agency—the acts or conduct of the asserted agent, from or through which such relation is to be imputed, must be legally traceable to the asserted principal.

"An implied agency must be based upon facts, and facts for which the principal is responsible; upon a natural and reasonable, but not a strained, construction of those facts. * * * It is often difficult to determine upon general principles whether any agency exists; rather it must be determined from the facts and circumstances of the particular case, and if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist. Where, however, it is not apparent from the facts and circumstances that there was an express or implied intention to create the relation of agency, it will not be held to exist, as where it is apparent that the alleged agent was acting for himself. So the relation will not be inferred from the mere fact that third persons thought or assumed that the agency existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable and to the advantage of the supposed principal; nor will it be implied from facts which show that the alleged agent was a mere instrumentality." 2 C. J. pp. 435-438.

See Talladega Co. v. Peacock, 67 Ala. 253, 262, where it was said:

"The duty and power with which he was clothed is to be inferred from his acts in that capacity, which were known to, and acquiesced in, by the company. It is true, as a general rule, that agency must be proved otherwise than by the mere acts of the agent, before it can be assumed that such acts are binding on the principal. And it may also be true that, as a general rule, the mere acts of the assumed agent, unaccompanied by any evidence tending to show that the principal had knowledge of, or assented thereto, are not even competent evidence to be submitted to the jury upon the question of agency. But, when there is any evidence tending to show the assent of the principal to the acts of the agent, these acts, in connection with such evidence of the principal's assent thereto, must go to the jury, and if the acts of the supposed agent are of such a nature and so continuous in their character, as to furnish in themselves, any reasonable ground of inference that they were known to the principal, and that, in the absence of

authority to the agent, he would not have suffered them, the acts are competent evidence to be submitted to the jury."

[6] There is no evidence, or reasonable inference therefrom, authorizing the conclusion that the News had knowledge of, or assented to Owen's assumption of managership or agency for the News in making the contract with the plaintiff. There is no evidence that any officer or managing agent of the News was aware of Owen's purpose to write the quoted letter of May 25, 1920, or, even during the printing of the book, that such letter had been written. There is no evidence that the News was advised that Owen was assuming to contract in its behalf with plaintiff. The burden of proof was upon the plaintiff to present facts and circumstances, or either, designed to show the requisite knowledge or assent of the asserted principal to Owen's representation of it in the premises, in the act of making this contract with the plaintiff. 2 C. J. p. 945.

[7, 8] On June 22, 1920, plaintiff gave a check, payable to the "Birmingham News Buyers' Guide," in payment for plaintiff's advertisements in the "Buyers' Guide" This check was first indorsed by A. V. Owen, then by the "Birmingham News Co." to a local bank. It is to be noted that the News was not the payee in this check. The check, through its naming of the payee, evinced no purpose on the part of the drawer thereof to pay the News for the advertisements. The indorsement of such check by the News Company after its indorsement by Owen, did not invest the check with any evidential effect to show either acquiescence or ratification by the News of the act of Owen in respect of the contract in question. The delivery of the Guide, in book form, at the News building, where Owen is said to have occupied office space, was not an act effective to establish, even inferentially, assent to the act of Owen in contracting with plaintiff.

The printing of the book having been completed in August, 1920, it appears from phases of the evidence that several monthly bills were made out by plaintiff against the Birmingham News and sent to the News, on which, among others, an item for printing the "Birmingham News Buyers' Guide" was listed. There is evidence tending to show the payment by the News of other items on these statements of account. There is also evidence tending to show that the News did not, until February, 1921, question or repudiate the item on the statements for printing the Guide in book form. Owen departed—when, is not disclosed.

[9, 10] Intention, express or implied, to ratify an unauthorized act is a material factor in an inquiry of ratification vel non by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another. 2 C. J. pp. 488, 489, 492, 493; Lee v. Fontaine, 10 Ala. 755, 44 Am. Dec. 505; Jones v. Atkinson, 68 Ala. 167. With respect to ratification, a distinction is taken between unauthorized acts of one not an actual agent and acts by an actual agent in excess of his authority. 2 C. J. p. 489. To establish ratification in the former instance requires more evidence than in the latter instance. In the absence of any evidence of Owen's actual agency for the News in consummating this contract with plaintiff, the inquiry of ratification vel non by the News is referable to the category first stated, viz.: Where the acts sought to be made the subject of ratification were those of a stranger to the asserted principal.

[11] While silence alone will not always suffice to even invite a conclusion that ratification was effected; yet under the related circumstances, shown to have been known to the asserted principal, silence may afford evidence from which the jury may infer an intent to ratify. Northwestern Co. v. Cornell, L. R. A. 1918C, 220, annotation, pp. 222–227.

[12, 13] Evidence tending to show these facts and circumstances, but summarily stated, made an issue of ratification vel non by the defendant, of the unauthorized act of Owen, in contracting with plaintiff, that the jury's judgment was required to solve, notwithstanding there was, as has been stated, no evidence inviting conclusions that defendant was estopped to deny Owen's agency or that an implied agency was created by the conduct of the defendant, the previous dealings and their course between plaintiff and defendant, including the defendant's credit account with the printery operated by plaintiff, the location of Owen in the buildings of defendant during the progress of the advertising campaign, according to the scheme already indicated, the subject-matter of the contract in question, including the name of the publication, the "Birmingham News 1920–1 Buyers' Guide," the knowledge of the manager of the defendant that the plaintiff was concerned in the publication of the Guide in book form, the furnishing of a part of the type used by plaintiff in printing the Guide, which was returned to the defendant, the delivery of a comparatively large proportion of the books at the defendant's building, and the rendition to the defendant of several monthly bills on which a charge item, based upon the printing of the Guide, appeared—of which charge no dissent or repudiation was communicated by defendant to plaintiff until many months had elapsed, a period beyond a reasonable time after the receipt by defendant of the first bill carrying this charge item. Under the circumstances disclosed by the evidence, it was the duty of the defend-

ant—if a bill was rendered it showing an item of charge against the News for this printing—to communicate to the printing company, within a reasonable time, its denial of the liability thus imported; and, if, under these circumstances, the News remained silent beyond a reasonable period after receipt of the bill with respect to its thus asserted responsibility in the premises, such silence was evidence, inconclusive, of course, from which ratification might be inferred by the jury. Accordingly the defendant was not erroneously denied the general affirmative instruction requested in its favor.

[14] Defendant's special requests, numbered 6, 7, and 8, were erroneously refused. They were justified by the evidence. They did not trench upon the theory of ratification proposed by phases of the evidence.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.