669 So.2d 825 (1995)
BIRMINGHAM-JEFFERSON COUNTY TRANSIT AUTHORITY
v.
Jack ARVAN.
1940748.
Supreme Court of Alabama.
August 18, 1995.
Order Denying Rehearing November 3, 1995.
*826 John C. Falkenberry and David W. Long of Sirote & Permutt, P.C., Birmingham, for appellant.
Thomas E. Baddley, Jr. and Jeffrey P. Mauro of Baddley & Crew, P.C., Birmingham, for appellee.
HOUSTON, Justice.
The defendant, Birmingham-Jefferson County Transit Authority ("the Authority"), appeals from a judgment entered on a general jury verdict for the plaintiff, Jack Arvan. We affirm.
Arvan sued the Authority for damages, alleging breach of an employment contract and conversion. Specifically, Arvan alleged that the Authority had contracted with him for "permanent" or lifetime employment and that it had later terminated his employment without just cause. In connection with his conversion claim, Arvan alleged that the Authority had failed to return to him certain items of personal property, including an expensive pen and pencil set and a computer program that he had been developing for future marketing within the mass transit industry. The trial court denied the Authority's motions for a directed verdict and submitted the claims to a jury. The jury awarded Arvan $685,000 in compensatory damages and $400,000 in punitive damages. As to the punitive damages award, the trial court granted the Authority's motion for a judgment notwithstanding the verdict. The granting of that motion is not at issue on this appeal. The trial court denied the Authority's motion for a new trial.
This appeal presents the following issues:

*827 1) Whether the Authority was entitled to a judgment as a matter of law or to a new trial with respect to Arvan's claim alleging breach of a lifetime employment contract;
2) Whether the Authority was entitled to a judgment as a matter of law or to a new trial with respect to Arvan's conversion claim;
3) Whether the Authority was entitled to a new trial on the ground that the trial court failed to instruct the jury on a necessary element of Arvan's breach of contract claimthat he had to provide substantial consideration for the contract separate from the services to be rendered;
4) Whether the Authority was entitled to a new trial on the ground that the trial court failed to give a written requested jury instruction on mitigation of the damages sought under the contract claim;
5) Whether the $100,000 statutory limit on damages applicable to governmental entities (Ala.Code 1975, § 11-93-2) was applicable under the facts of this case; and
6) Whether the damages award was supported by the evidence.
With respect to the first issue, we note that three elements must be shown to establish that an employment contract is not terminable at will: 1) that there was a clear and unequivocal offer of permanent employment, i.e., lifetime employment or employment of a definite duration; 2) that the hiring agent had the authority to bind the principal to a permanent employment contract; and 3) that the employee provided substantial consideration for the contract separate from the services to be rendered. Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987). The evidence, and the inferences that could reasonably be drawn from the evidence, were conflicting in the present case. Without reciting that evidence in great detail, suffice it to say that there was evidence that, when viewed most favorably toward Arvan, see Carter v. Henderson, 598 So.2d 1350 (Ala.1992) (discussing both the "sufficiency of the evidence" standard applicable to the review of a motion for a directed verdict or for a judgment notwithstanding the verdict, and the "weight of the evidence" standard applicable to the review of a motion for a new trial), indicated 1) that Arvan was experienced in the management of maintenance departments within mass transit systems; 2) that the Authority was in need of a manager to resolve certain problems within its maintenance department; 3) that the Authority's general manager made a written offer to Arvan to provide him with "full-time permanent employment" (see Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986), stating that this Court has interpreted the term "permanent employment," as used in employment contracts, to be synonymous with lifetime employment); 4) that the general manager offered Arvan employment under very generous terms in order to entice Arvan to go to work for the Authority; 5) that the general manager orally promised Arvan that, if he would "take [the] job and... straighten [the maintenance department] out," he would "guarantee [him] a job for life"; 6) that the general manager answered only to the Authority's board of directors and that he "[had] the authority or consent of [his] superiors" to make the particular offer that he made to Arvan (see Harrell v. Reynolds Metals Co., supra, discussing the authority necessary for an agent to bind the principal to a lifetime employment contract); 7) that Arvan gave up a job opportunity in California in order to accept the Authority's offer (see Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala.1982), stating that the relinquishment of prior employment may constitute sufficient consideration for a lifetime employment contract); 8) that Arvan performed satisfactorily in his position with the Authority and that at the time of his discharge he was ready, willing, and able to continue to perform his duties there; 9) that his discharge occurred because of personal differences he developed with the general manager, not because of necessary cutbacks in personnel or other reasons that would constitute just cause for discharge (see Bates v. Jim Walter Resources, Inc., supra, stating that even a "permanent" employee can be discharged for cause); and 10) that Arvan was damaged as a result of his discharge. Based on that evidence, we conclude that Arvan's *828 breach of contract claim was properly submitted to the jury and that the verdict on that claim was not contrary to the weight of the evidence, i.e., that it was not "`plainly and palpably wrong and unjust.'" Carter v. Henderson, supra, at 1354, quoting Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990).
To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. Huntsville Golf Development, Inc. v. Ratcliff, Inc., 646 So.2d 1334 (Ala. 1994). There was evidence that the Authority wrongfully detained or interfered with certain items of Arvan's personal property after Arvan had been discharged. Therefore, we conclude, with respect to the second issue, that there was sufficient evidence to submit Arvan's conversion claim to the jury and that a verdict for Arvan on the conversion claim would not have been contrary to the weight of the evidence.
The third issuewhether the Authority was entitled to a new trial on the ground that the trial court failed to instruct the jury on the "substantial consideration" element of the contract claimwas not raised below and, therefore, was not properly preserved for appellate review. Rule 51, Ala.R.Civ.P.; Adriatic Ins. Co. v. Willingham, 567 So.2d 1282 (Ala.1990).
As to the fourth issuewhether the Authority was entitled to a new trial on the ground that the trial court failed to give a written requested jury instruction on mitigation of the damages sought under the contract claimwe note that the evidence indicated that approximately a year after being discharged by the Authority, Arvan was hired by another transit system at an annual salary of $36,000, but without the benefits he had enjoyed while employed at the Authority. The Authority's attorney mentioned during his closing argument to the jury that Arvan had obtained other employment. The Authority requested that the following instruction be given:
"It is the duty of one damaged to exercise ordinary care to reduce his damages: he is bound to exercise such care as a reasonably prudent person would exercise under like circumstances to reduce or mitigate the damages. He can recover only such damages as would have been sustained had such care been exercised."
The trial court instructed the jury on the normal measure of damages recoverable for the breach of a contract, but it did not discuss mitigation of damages. See Alabama Credit Corp. v. Higgins, 251 Ala. 17, 19, 36 So.2d 227, 229 (1948) ("[i]t is permissible for the defendant to show, in order to reduce this prima facie amount of recovery (the stipulated salary)[,] that the plaintiff obtained, or could have obtained, other employment by the exercise of reasonable diligence on his part"). The following colloquy occurred between the trial court and the Authority's attorney out of the presence of, and just before submission of the case to, the jury:
"The Court: What's on your mind, David?
"[The Authority's attorney]: It's a charge on mitigation, Your Honor, that we think should be given out of [Alabama Pattern Jury Instructions, instruction 1.02].
"The Court: All right.
". . . .
"The Court: ... You want me to bring [the jury] back and talk about mitigation of the damages?
"[The Authority's attorney]: I think mitigation would be appropriate.
"The Court: What evidence is there that you're saying mitigated?
"[The Authority's attorney]: Well, I think just the standpoint in terms of what we've argued
". . . .
"The Court: I mean, tell me what evidence we have that there was a failure to mitigate that would justify giving it. I mean, that's a true statement of law in the abstract. I did not give it for that reason. But I'll be happy to call them back. Y'all decide whether y'all want me to call them back and fix anything." *829 Following this discussion, the Authority's attorney made no further comments with respect to the trial court's oral charge.
On appeal, the Authority presents a two-sentence argument, without citation to any authority, that "the court's failure to charge the jury on Arvan's duty to mitigate his damages warrants a new trial." After carefully reviewing the record and the briefs, and with more than a little concern as to the adequacy of the argument made by the Authority both in the trial court and on appeal, we nonetheless conclude that although this issue is properly before us, no error was committed by the trial court. It is, of course, familiar law that in a jury case a party is entitled to have its case decided by a jury that is given the appropriate standard by which to reach its decision. A wrongful refusal of a requested jury instruction constitutes a ground for a new trial. CIT Financial Services, Inc. v. Bowler, 537 So.2d 4 (Ala.1988). However, the instruction requested by the Authority, although correctly stating in the abstract the general rule with respect to mitigation of damages, would have been confusing to the jury without further explanation as to how it related to the facts of this case. A requested instruction that states an abstract proposition of law without instructing the jury on the effect of the rule on the facts adduced in the trial of the case may be refused without error. See, e.g., Mobile Press Register, Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472 (1970); Associates Investment Co. v. Hamm, 284 Ala. 332, 224 So.2d 880 (1969). Although the evidence indicated that Arvan obtained new employment, the requested instruction did not specifically state that Arvan's damages were due to be reduced by the amount of his $36,000 annual salary in his new position, and the rather sketchy argument made by the Authority's attorney to the trial court leads us to believe that the trial court never understood the true nature of the Authority's objection. Based on the record before us, we find no error in the trial court's denial of the charge on mitigation of damages.
With respect to the fifth issue, we note that the parties have stipulated that the Authority is a "governmental entity" within the meaning of § 11-93-2. However, as Arvan correctly points out, this Court has held that the $100,000 limit on damages set out in that statute is applicable only to tort judgments involving claims for bodily injury, death, or damage to tangible property. See Macon v. Huntsville Utilities, 613 So.2d 318 (Ala.1992); St. Paul Fire & Marine Ins. Co. v. Nowlin, 542 So.2d 1190 (Ala.1988). Therefore, § 11-93-2 was applicable only to Arvan's conversion claim. Because the jury returned a general verdict, we cannot know what portion of the $685,000 compensatory damages award, if any, was attributable to the conversion claim. However, because the evidence would not appear to support an award in excess of $100,000 in compensatory damages on the conversion claim, we will assume that the jury returned its verdict in accordance with the evidence and, therefore, that § 11-93-2 was not implicated.
With respect to the sixth and final issue, we note that the evidence indicated that Arvan was 47 years old when he was discharged; that he was earning an annual salary at that time of approximately $50,000; that his pen and pencil set was valued at approximately $1,000; that his computer program, if marketed, was valued at between $2,000 and $8,000 per copy; and that he had suffered mental anguish as a result of his discharge. (The jury was instructed, without objection, that it could award damages for mental anguish if it found for Arvan on his contract claim.) Based on this evidence, we conclude that the jury's award of compensatory damages was not unreasonable.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, KENNEDY, and BUTTS, JJ., concur.

On Application for Rehearing
HOUSTON, Justice.
APPLICATION FOR REHEARING OVERRULED.
*830 MADDOX, ALMON, SHORES, KENNEDY, and BUTTS, JJ., concur.
COOK, J., dissents.
COOK, Justice (dissenting from the overruling of the application for rehearing).
Because the trial court should have granted the motion of Birmingham-Jefferson County Transit Authority ("BJCTA") for a directed verdict, I would grant the rehearing and reverse the judgment of the trial court. Thus, I disagree with the appellee, Jack Arvan, who contends that the record supports his breach-of-employment-contract claim against BJCTA under an agency theory. More specifically, he insists that the record substantially evidences either the (1) actual or (2) apparent authority of Phil Gary, BJCTA's general manager, to bind BJCTA to a contract of employment for life with Arvan. In the alternative, Arvan contends that the record substantially evidences BJCTA's ratification of his employment contract. I shall briefly address each of these contentions.

I. Actual Authority
The term "actual authority" encompasses the concepts of both express authority and implied authority. Birmingham News Co. v. Birmingham Printing Co., 209 Ala. 403, 96 So. 336 (1923) (implied agency is a "form of actual agency"); Patterson v. Page Aircraft Maintenance, Inc., 51 Ala.App. 122, 125, 283 So.2d 433, 436 (Civ.App.), cert. denied, 291 Ala. 777, 283 So.2d 437 (Ala.1973). Implied authority "`is actual authority circumstantially proved, or evidenced by conduct or inferred from course of dealing between the alleged principal and agent.'" 51 Ala.App. at 125-26, 283 So.2d at 436 (emphasis added) (quoting 2A C.J.S. Agency). "`Implied powers, like any others, must be bottomed on some act or acquiescence of the principal, express or implied.'" Id. "Implied authority is such as the principal actually intends his agent to have, although that intention is to be discerned only from the nature of the task or from the acts and conduct of the principal from which the grant of power may be inferred even though not expressed." 3 Am. Jur.2d Agency § 75, at 579 (1986) (emphasis added).
It is undisputed that Gary did not have actual, express authority to procure lifetime employment contracts on behalf of BJCTA. Moreover, the record contains no evidence of acts or conduct of the principal, BJCTA, from which it could be inferred that Gary had actual, implied authority to procure such contracts. Thus, the existence of such authorityif discernible at allwas inferable only from Gary's own five-year employment contract. However, that contract authorized him merely to (1) "manage the properties and business"; (2) "sign and execute contracts and agreements necessary and proper for the performance of his duties"; and (3) "hire, fire, promote and demote all personnel within the bounds of law, contract and personnel policies."
But "[t]he law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. Alabama Mills, Inc. v. Smith, 237 Ala. 296, 301, 186 So. 699, 704 (1939)." Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 311 (Ala. 1992) (emphasis added), cert. denied, 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993). Thus, it cannotas a matter of lawbe inferred that BJCTA conferred on Gary the authority to procure lifetime employment contracts on its behalf as a power concomitant with, or incidental to, those "necessary or proper for the performance of his duties." Consequently, the evidence in this case fails to support Arvan's claim against BJCTA based on a theory of actual authority.

II. Apparent Authority (Agency by Estoppel)
The principles underlying the doctrine of apparent agency, or agency by estoppel, were thoroughly discussed in Malmberg v. American Honda Motor Co., 644 So.2d 888 (Ala.1994), pertinent portions of which I set forth at length:
"The test for determining whether an agency existed by `estoppel' or by `apparent authority' is based upon the potential principal's holding the potential agent out *831 to third parties as having the authority to act:
"`While some suggestion has been made that a distinction exists between apparent authority and authority grounded on estoppel, ... our cases and authority generally base the two upon the same elements.
"`"`As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny.'
"`"Such apparent authority is the real authority so far as affects the rights of a third party without knowledge or notice...." ...
"`"When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency...." ...
"`"The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent."'
"Pearson v. Agricultural Insurance Co., 247 Ala. 485, 488, 25 So.2d 164, 167 (1946) (citations omitted); see Wood v. Shell Oil Co., [495 So.2d 1034, 1038 (Ala.1986)]. The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be. See Automotive Acceptance Corp. v. Powell, 45 Ala.App. 596, 234 So.2d 593 (Ala.Civ.App. 1970), quoted with approval in Massey-Ferguson, Inc. v. Laird, 432 So.2d 1259 (Ala.1983)."
Malmberg, 644 So.2d at 891 (emphasis added).
Apparently with these principles in view, Arvan contends that "Chairman of the Board, Jackie Davison, [was] present during [Arvan's] initial meeting with Phil Gary whereby the terms of [Arvan's] employment were negotiated." Appellee's Response [Brief] to Appellant's Motion for Leave to File Response to Reply Brief of Appellee in Opposition to Petition for Rehearing, at 3. Had the record actually demonstrated that Gary unequivocally offered Arvan lifetime employment in the presence of the chairman of BJCTA's board of directors, and that the chairman assented, or utterly failed to object, to the offer, I might have construed the incident as substantial evidence of agency by estoppel. But that is not this case. On the contrary, the record demonstrates that Davison met Arvan only briefly in Gary's office, and, indeed, reveals that he was not present during any of the subsequent, substantive discussions. Consequently, I am compelled to conclude that BJCTA did nothing to justify Arvan in believing that Gary was authorized to procure lifetime employment contracts on its behalf.

III. Ratification
In Birmingham News Co. v. Birmingham Printing Co., 209 Ala. 403, 407, 96 So. 336, 340 (1923), this Court stated:
"Intention, express or implied, to ratify an unauthorized act is a material fact in an inquiry of ratification vel non by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another."
(Emphasis added.) However, "no ratification can be [inferred] from a principal's acts or *832 conduct which is as consistent with an intent not to ratify as [with an intent] to ratify, or from the conduct of a principal which has been forced upon him by reason of his agent's acting contrary to his instructions." 2A C.J.S. Agency § 84 (1972); see also Evanston Bank v. Conticommodity Services, Inc., 623 F.Supp. 1014, 1036 (N.D.Ill.1985). Moreover, the principal's conduct must "be truly voluntary in character." Rakestraw v. Rodrigues, 8 Cal.3d 67, 73, 104 Cal.Rptr. 57, 61, 500 P.2d 1401, 1405 (1972). In other words, "there can be no [ratification] if the act, although voluntary, is done only because the purported principal is obligated to minimize his losses caused by the agent's wrongful act." 8 Cal.3d at 73, 104 Cal.Rptr. at 61, 500 P.2d at 1405.
The record fails to demonstrate that BJCTA possessed either the requisite knowledge or the intent to ratify Gary's unauthorized act. First, although Gary had no authority to procure for BJCTA a lifetime employment contract with any prospective employee, he did have express authority to hire employees. For all the record reveals, this contract was the first and only contract procured by Gary that contained such a provision. Thus, the mere fact that Arvan was working at the instigation of Gary was insufficient to place BJCTA on such notice that it should have inquired whether Gary had exceeded his hiring authority.
Indeed, Arvan presented no evidence that any matter regarding the duration of his tenure came to the attention of a member of BJCTA's board of directors until November 1992, following a significant altercation between Arvan and a union representative. Under these facts, BJCTA's mere acquiescence in Arvan's employment must be regarded as being "as consistent with an intent not to ratify as [with an intent] to ratify." 2A C.J.S. Agency § 84, supra (emphasis added).
Also significant is the fact that BJCTA's acquiescence in Arvan's employment cannot be construed as "truly voluntary in character." Rakestraw v. Rodrigues, 8 Cal.3d 67, 73, 104 Cal.Rptr. 57, 61, 500 P.2d 1401, 1405. If, as Arvan's arguments imply, nothing short of repudiation of his employment would have negated ratification, BJCTA would, upon attempting such repudiation, have subjected itself immediately to liability for breach of contract. A corporation in BJCTA's position should not be placed between the proverbial "rock and a hard place"between the "Scylla" of an action for breach of contract and the "Charybdis"[1] of ratification. For these reasons, I respectfully dissent from the overruling of the application for rehearing.
NOTES
[1] Battles v. Pierson Chevrolet, Inc., 290 Ala. 98, 107, 274 So.2d 281, 288 (1973) (Faulkner, J., concurring specially).