[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 17 2000
THOMAS K. KAHN
CLERK

No. 99-10491

D. C. Docket  No.  97-01013-CV-MJ-S

JAMES SCOTT WESSON,

Plaintiff-Appellant,

versus

THE HUNTSMAN CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Alabama

(**March 17, 2000**)

Before ANDERSON, Chief Judge, and WILSON, Circuit Judge, and HILL, Senior
Circuit Judge.

HILL, Senior Circuit Judge:

This is an appeal from the grant by the district court[1] of appellee The Huntsman Corporation's (Huntsman) (1) motion for partial summary judgment dismissing as time barred appellant James Scott Wesson's (Wesson) claim under the Age Discrimination and Employment Act of 1967 (ADEA) and (2) motion for summary judgment on Wesson's state law claim for breach of an oral contract for guaranteed lifetime employment. Based upon the following, we affirm.

## I. FACTUAL BACKGROUND

For eighteen years, from 1965 to 1983, Wesson was employed by Shell Chemical Corporation (Shell) as a salesman of polystyrene and related chemical products. Although Shell's polystyrene plant was in Ohio, Wesson serviced customers in his sales territory from his home in Alabama.

In 1983, Huntsman bought the Ohio facility from Shell and acquired its polystyrene business. Wesson was a member of the Shell transition team that worked with Huntsman personnel to insure the successful transfer of Shell polystyrene customers to Huntsman.

---

[1] Both parties executed a joint stipulation to the exercise of jurisdiction by a United States magistrate judge and their consent to have this case decided by him. However, for ease of reference we refer to him as the district court.

In March 1983, Huntsman made a written employment proposal to Wesson.[2] While the written offer set forth the specific terms, conditions and provisions of Wesson's employment, it contained no reference to employment duration nor guarantee of lifetime employment.

In April 1983, Wesson met twice with Huntsman President, Jon Huntsman, and Huntsman Senior Vice President of Marketing and Sales, Ron Rasband, to discuss his potential employment with Huntsman. During one of these meetings, Wesson voiced three concerns: (1) that he was, in 1983, forty-three years old and desired permanent employment until retirement age; (2) that he wanted employment benefits comparable to those of Shell; and (3) that he did not want to relocate from his Alabama home.

At one of these meetings, Rasband told Wesson that he "would always have a job." Mr. Huntsman told Wesson words to the effect that "as long as I have a company, you will always have a job with Huntsman." Wesson was a copious notetaker and made hand-written notes of these conversations, both on the written employment agreement itself and on a separate sheet of paper. These notes did not suggest or refer to Wesson's duration of employment or guarantee of lifetime employment.

---

[2] Similar offers of employment were made by Huntsman to some eighty other Shell employees.

3

Things went well for the next thirteen years, 1983 to 1996, as Wesson worked successfully for Huntsman.[3]  Huntsman alleges that, in early 1996, Wesson was offered the possibility of employment with Huntsman in Michigan.  As he did not want to relocate from Alabama, Wesson did not pursue this option.  In February 1996, Huntsman consolidated and reduced its workforce by thirty-eight positions.  Wesson was terminated.  At the time, he was fifty-five years of age.

## II.  PROCEDURAL BACKGROUND

In June 1996, Wesson filed a charge of age discrimination with the Equal Opportunity Employment Commission (EEOC) against Huntsman.  In September 1996, his attorney wrote the EEOC, requesting a right to sue letter.  In December 1996, the EEOC issued the following Notice to Wesson:

> This is to inform you that *the Commission has made a determination that it will not proceed further* with its processing of the above-referenced case under the [ADEA] *because Charging Party* [Wesson] *intends to file suit in Federal District Court.*

> The fact that the Commission will take no further action does not affect your rights to take legal action on your own behalf.  As you were advised during this investigation, your private suit rights have not been protected

---

[3] It is undisputed that Wesson received the same benefits with Huntsman as he had with Shell and that he was paid a joining bonus of $17,000.00.  Wesson admits that he did not surrender an existing job with Shell to work for Huntsman as his prior job with Shell ended when Huntsman bought the Ohio plant.  Had he wanted continued employment with Shell, he would have been forced to work at a different Shell plant.

by filing a complaint. If you wish to file a charge, contact this office immediately.

(Emphasis added.)

Some ten months after the Notice was issued, in November 1997, a second, different attorney filed a complaint in federal district court on Wesson's behalf, alleging age discrimination under the ADEA and breach of an oral contract of guaranteed lifetime employment. The ADEA claim was based upon the June 1993 EEOC Charge and the December 1998 Notice.

In March 1998, Huntsman moved for partial summary judgment on the ADEA claim on the grounds that federal law requires an ADEA plaintiff to file his or her lawsuit within ninety (90) days of receiving notice of the termination of the EEOC administrative proceeding. 42 U.S.C. § 2000e-5(f)(1). After full briefing, the magistrate judge agreed. He granted Huntsman's motion and dismissed Wesson's ADEA claim on the basis that it was time-barred.

In June 1999, at the close of discovery, Huntsman moved for summary judgment on the remaining claim of an oral contract of lifetime employment. After full briefing, in a twelve-page memorandum decision, the magistrate judge agreed, granting Huntsman's motion. Wesson now appeals both rulings.

III. STANDARD OF REVIEW

We review the district court's grants of partial summary judgment and summary judgment *de novo*, reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party, and applying the same standard as the district court.[4] *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citations omitted). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.;* Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

### A. *Issue Presented*

We discuss only one issue: was the district court correct in his ruling on summary judgment that Wesson could not establish, as a matter of Alabama law, his state law claim of an alleged oral contract of guaranteed life employment by Hunstman.[5]

### B. *Contentions of the Parties*

1. Wesson

---

[4] *See* note 1 *supra*.

[5] We affirm without opinion the grant by the magistrate judge of Huntsman's motion for partial summary judgment on Wesson's ADEA claim on the basis that such claim was time barred. *See* 11th Cir. R. 36-1.

As the nonmoving party, reviewing all facts and reasonable inferences in his favor, Wesson claims that he has met his burden of showing that there is substantial evidence in the record to support a *prima facie* case of a contract of permanent employment under Alabama law. In support, Wesson argues that the Supreme Court of Alabama, in *Birmingham-Jefferson County Transit Authority v. Arvan,* 669 So.2d 825(Ala. 1995), articulated a three-prong test to determine if an employment contract is one other than terminable at will.[6] Wrote the Alabama court:

> [T]hree elements must be shown to establish that an employment contract is not terminable at will: (1) that there was *a clear and unequivocal offer* of permanent employment, *i.e.,* lifetime employment or employment of a definite duration; (2) that the hiring agent had the authority to bind the principal to a permanent employment contract; and (3) that the employee provided *substantial consideration for the contract separate from the services to be rendered.*

*Id.* at 827 (emphasis added).

Wesson asserts that the oral representations made in 1983, by Mr. Huntsman and Rasband, as Huntsman agents, taken in the context of employment negotiations, clearly created an unequivocal offer of permanent employment and satisfy the first element of *Birmingham-Jefferson County.* As to the second element, Wesson contends that Mr. Huntsman and Rasband, as the two highest ranking Huntsman

---

[6] In general, a contract of employment that is indefinite and without stipulation for an implied minimum period is at the will of either party. *Alabama Mills Inc. v. Smith*, 186 So. 699 (Ala. 1939).

7

executives, had obvious authority to contractually bind the principal company, satisfying the second element of *Birmingham-Jefferson County.* Finally, Wesson claims that he furnished consideration over and above going to work for Huntsman, as he left an eighteen-year secure employment with Shell to work for Huntsman, at the time an unknown entity in the chemical industry.[7]

2. Huntsman

Huntsman claims that the issue of lifetime employment was secondary, "almost [a] throw-away claim" to Wesson's ADEA claim, touted by Huntsman to be the centerpiece of Wesson's complaint. It contends that lifetime employment claim is based only upon the following Wesson deposition testimony:

> A. And then [Mr. Huntsman] told me that they needed me. They wanted me on board, that I had skills and talents, that I had done an excellent job with Shell and that I had been handpicked to be on the transition team

[7] Implicit in the definition of "permanent employment" established by *Alabama Mills, see* note 6 *supra*, and its progeny, Wesson argues, are the issues of the continued need for a plaintiff's services and his or her performance abilities. *See Bates v. Jim Walter Resources, Inc.,* 418 So.2d 903 (Ala. 1982). In this regard, Wesson contends that although Huntsman was undergoing a reorganization, there was a continued need for his sales services. *Id.* at 906. Wesson claims that immediately after he was terminated, a person with far less qualifications was hired to sell chemical products in the area where he was formerly employed. In addition, Wesson claims that the evidence is undisputed that he had performed his job with Huntsman for thirteen years in a satisfactory manner, who either continually met or exceeded his sales goals. Hence, he argues there was no reason for his discharge and that he has presented a *prima facie* case, sufficient to withstand summary judgment, that Huntsman made to him an unequivocal offer of permanent employment.

8

and he was hand picking me to become a permanent employee of Shell – I mean of Huntsman. And that he felt that I would do a good job, that I would wear more hats than any hats I had ever worn in Shell. I would have more responsibility than I ever dreamed possible in Shell and I would have the adequate authority to go with that responsibility. And I would be able to make decisions that I couldn't even dream of making within the Shell organization. And that if I came on board with him, I would never regret it as long as I lived. And he would be forever grateful indebted to me for making what he considered from my standpoint a rather high risk opportunity . . .

A. Jon Huntsman told me that, as I have already stated, that I would wear these hats. I would have these responsibilities, I would have authority to go with the responsibilities. We were going to grow a company that would stagger the imagination of the industry . . .

A. He said that my concern was the least of the concerns that I should have, *and that as long as he had a company I will always have a job with Huntsman.*

Q. As long as he had a company. Is this sum and substance of what he said or is that a quote?

A. That's basically a quote.

(Emphasis added.).

These statements, Huntsman argues, are not the clear and unequivocal evidence necessary under Alabama law to support a claim for an oral contract of lifetime employment . *Birmingham-Jefferson County*, 669 So.2d at 827. Under Alabama law, an employee claiming an oral contract for lifetime has a particularly "heavy burden of proof" as these contracts are extraordinary and not lightly to be implied. *Alabama Mills,* 186 So. at 704; *Howard v. Wolff Broadcasting Corp.,* 611 So.2d 307, 310-11

9

(Ala. 1992); *Chastain v. Kelly-Springfield Tire Co.,* 733 F.2d 1479, 1484 (11th Cir. 1984). Huntsman argues that the alleged remark made by Mr. Huntsman was too vague and indefinite to support an extraordinary claim for a lifetime contract.

Huntsman contends that it is also telling that Wesson made his own notes, both on the written offer of employment and on a separate piece of paper. No part of those notes and no aspect of the written offer refers to or suggests any term of employment or a guarantee of lifetime employment. In other words, Huntsman asserts, none of the remarks alleged to be made by Mr. Huntsman were made in a contractual context.

As to consideration, Huntsman claims that giving up existing employment with Shell does not satisfy the sufficient, independent consideration element of *Birmingham-Jefferson County. See Orsini v. Trojan Steel Corp.,* 64 S.E.2d 878, 880 (S.C. 1951). Also, Wesson did not surrender anything to work for Huntsman, and not Shell, as he received substantial additional benefits, *i.e.* comparable employee benefits and a $17,000.00 signing bonus.[8]

C. *Analysis*

---

[8] As to Huntsman's continued need for Wesson's services, in 1995 and 1996, there was a corporate reorganization and reduction in workforce at Huntsman, and Wesson's job was no longer necessary. Thirty-eight other non-officer employees were laid off. Huntsman contends that Wesson cannot cite any authority that allows a terminated employee to challenge a legitimate corporate business decision to reorganize and downsize.

In this diversity appeal, we look to Alabama law to determine whether Wesson has met the "heavy burden of proof to establish that [his] employment relationship is other than 'at will.' The law [of Alabama] considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied." *Howard,* 611 So.2d at 310-11 (*citing Alabama Mills*, 186 So. at 704). The presumption exists in Alabama that an employment relationship of indefinite duration is "at the will of either party." *Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So.2d 428, 430 (Ala. 1995).

Under the three-prong test of *Birmingham-Jefferson County,* Wesson must establish that he received: (1) a clear and unequivocal offer of lifetime or permanent employment; (2) that the hiring agent(s) had the authority to bind Huntsman to a permanent employment contract; and (3) that he provided substantial consideration for the contract separate from the services to be performed. *Birmingham-Jefferson County*, 669 So.2d at 827. With this said, however, in the context of this summary judgment appeal, we view all facts and reasonable inferences in the light most favorable to Wesson, the non-moving party. *Allison*, 184 F.3d at 1306.

We start our analysis with the first prong – a clear and unequivocal offer. An offer of 'permanent employment' is clear and unequivocal under Alabama law. *See Bates*, 418 So.2d at 906. An offer of 'employment for life' is clear and unequivocal

11

under Alabama law. *See Chastain v. Kelly-Springfield Tire Co.*, 733 F.2d 1479, 1481 (11th Cir. 1984). Such an offer by an employer is a weighty obligation. *Id.* Permanent employment is synonymous with lifetime employment. *See Birmingham-Jefferson County*, 669 So.2d at 827. If an offer is not clear and unequivocal, it is presumed under Alabama law that the employment contract is at-will and can be terminated by the employer with or with out justification. *Udcoff v. Freidman*, 614 So.2d 436, 438 (Ala. 1993).

Here the 1998 deposition evidence submitted by Wesson in support of his claim are the oral representations allegedly made to him fifteen years earlier, in April 1983, by Mr. Huntsman and Rasband during meetings negotiating his written offer of employment.[9] Wesson concedes in his deposition testimony, however, that it was only the words used Mr. Huntsman, and not by Rasband, that constituted a clear and unequivocal offer of lifetime employment.

Wesson testified that Rasband told him that even while building his empire, Mr. Huntsman had always "taken care of the people in Huntsman," that if Wesson went

---

[9] Other evidence submitted by Huntsman consists of the written offer of employment, together with Wesson's handwritten notes on the offer itself and on a separate blank sheet of paper. While the offer sets forth definite terms of employment, *i.e.*, title, sales boundaries, office and support services, benefits, company car, salary, bonus, any specific reference to duration is noticeably absent. While "Starting Date: Completion of Acquisition??" is mentioned in Wesson's notes, noticeably absent is any reference to duration or term of employment.

12

to work for Huntsman [he] would never, ever regret it," that "[he] would always have a job, and that "[he] would always have a job doing something because of somebody [sic] with [his] talents and skills."

Wesson testified that Mr. Huntsman told him that "as long as I have a company, you will always have a job with Huntsman." Wesson testified that these are the only words and this is the only statement made to him regarding guaranteed lifetime employment some fifteen years earlier. These are the only words and this is the only statement upon which Wesson relies to establish a clear and unequivocal oral offer of permanent or lifetime employment, sufficient to meet his heavy burden under Alabama law, that his is an employment relationship other than 'at will.' *Howard*, 611 So.2d 310-11. We disagree.

As we recognized, an offer of permanent employment by any employer is viewed by Alabama courts as extraordinary to begin with – not lightly to be implied. *Id.* This statement made by Mr. Huntsman, fifteen years earlier, when he was negotiating with Wesson, in addition to negotiating with some eighty other former Shell employees, is not clear or unequivocal of anything.

As the district court noted, the statement made by Mr. Huntsman "appears to be a comment on the stability of [Mr.] Huntsman's company rather than a contractual offer of lifetime employment." Perhaps it can be viewed as a prediction, made by an

enterprising entrepreneur, eager to gain entrance into a new industry. Perhaps it can be viewed as puffing, by an ambitious businessman, proud of his reputation for fairness among his employees. What it most definitely cannot be viewed as, is a clear and unequivocal offer of lifetime employment in Alabama. As we conclude that Wesson does not meet the first prong of the three-prong test of *Birmingham-Jefferson County,* we need not discuss the other two.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.